CITY OF PLATTSMOUTH V. HUGH MURPHY.

FILED OCTOBER 19, 1905.  No. 13,832.

1. Unconstitutional Statute: AMENDMENT. An act of the legislature amendatory of, or supplemental to, an unconstitutional law is unconstitutional and void, and chapter 14, laws 1887, being amendatory of, and supplemental to, chapter 14, laws 1885, which has been held unconstitutional and void, is also invalid.

2. Cities: CONTRACTS: RATIFICATION. A contract entered into by a city in violation of a mandatory provision of its charter is void, and can be ratified only by an observance of the conditions essential to a valid agreement in the first instance.

3. The maxim, *Ignorantia juris neminem excusat*, applied.

ERROR to the district court for Cass county: PAUL JESSEN, JUDGE. *Reversed.*

*H. D. Travis* and *J. L. Root,* for plaintiff in error.

*Matthew Gering, contra.*

ALBERT, C.

This action was brought to recover the balance due on an alleged written contract between the city of Plattsmouth and one Fanning for the paving of certain streets of that city. The work was performed and accepted by the city, and, by the terms of the contract, the amount due the contractor therefor was $7,628.38. Of this amount the city paid $7,097.06, but afterwards refused to pay the balance. Fanning assigned his claim for the balance to the plaintiff. There was a verdict for the plaintiff, and from a judgment rendered thereon the city brings the case here on error.

Among other defenses, it is urged that the contract is void, because it was made in violation of certain mandatory provisions of the charter under which the city was acting at the time the contract was made. Among other violations relied upon to defeat the action is that no estimate of the cost of the improvement had ever been made and submitted to the city council by the city engineer, as required by law, before the contract was made. The evidence shows a history of the contract and of the preliminary steps leading up to its execution. We have gone over this evidence with care, and it is clear and convincing that no estimate of the cost of the improvement in question was ever made and submitted to the council by the city engineer before the contract was made.

This brings us at once to the question whether the making of such estimates and their submission to the city council were prerequisites to a valid exercise of the power of the city to make the contract, and to determine that question it is necessary to consider the provisions of the charter under which the city was acting at the time, so far as such provisions relate to the matter in hand. The

contract was made in 1892, and at that time the city had more than 5,000, but less than 10,000 inhabitants—a fact which stands admitted of record. In 1879 an act was passed and approved, entitled "An act to provide for the organization, government, and powers of cities and villages," which provided that all cities and villages containing more than 1,500 and less than 15,000 inhabitants should be governed thereby. Laws 1879, p. 193. In 1883 there was passed and approved "An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants." Laws 1883, ch. 16. As the defendant city then, as now, had less than 10,000 inhabitants, it was not affected by this act. In 1885 the legislature undertook to amend the title to the act of 1883 in such a way as to include cities of the second class having over 5,000 inhabitants. The title to the act is "An act to amend the title and sections 1, 2, 3 and 4, of an act entitled 'An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants.'" Laws 1885, ch. 14. This act was held void in *Webster v. City of Hastings,* 59 Neb. 563. Consequently, the powers and duties of the defendant city are to be determined without regard to this act. In 1887 an act was passed entitled "An act to amend sections 27 and 58, and to add subdivisions XVIII and LIX to section 52, of article II, of chapter 14, of the Compiled Statutes relating to 'cities of the second class,' having over five thousand (5,000) inhabitants, and to repeal said original sections 27 and 58 and all acts and parts of acts in conflict with this act." Laws 1887, ch. 14. This act clearly refers to the act of 1885, because there was no other act relating to cities having over 5,000 inhabitants. As we have seen, the act of 1885 was held unconstitutional and void, and it necessarily follows that all acts amendatory or supplemental thereto must fall with it. With the defendant city excluded from the act of 1883, because of having less than 10,000 inhabitants, and the acts of 1885

and 1887 unconstitutional and void, the act of 1879 is the act to which we must look to determine whether the lack of estimates of the cost of the improvement in question is fatal to the contract. Section 20 of the act of 1879, *supra,* so far as material at present, is as follows: "Before the city council shall make any contract for building bridges or sidewalks, or for any work on the streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate; and in advertising for bids for any such work the council shall cause the amount of such estimate to be published therewith." Construing substantially the same provision, in *Fulton v. City of Lincoln,* 9 Neb. 358, this court held that the power of the city council to bind the city by contract would depend, among other things, upon an estimate having been first made and submitted by the city engineer. The provision requiring such estimate is clearly mandatory, and it is well settled that a contract of a city made in violation of a mandatory provision of its charter is *ultra vires* and void. *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla,* 40 Neb. 775; *City of Kearney v. Downing,* 59 Neb. 549; *Ottawa v. Carey,* 108 U. S. 110; *Lewis v. Shreveport,* 108 U. S. 282; *Smith v. Newburgh,* 77 N. Y. 130.

It is claimed that the city afterwards ratified the contract. In *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla, supra,* in disposing of a like claim, Mr. Justice Post said:

"If a contract is invalid when made, because in violation of some mandatory requirement of statute, it will be deemed *ultra vires,* and can be ratified only upon the conditions essential to a valid agreement in the first instance," citing a long list of cases in support of his position. The mandatory provisions of the charter were not complied with in this case in the first instance, nor does the record disclose anything remotely approaching a subsequent

compliance therewith, which would bring the case within
the rule with respect to the ratification of an invalid con-
tract, as just stated.   In the same case the learned judge
used the following language, which has our unqualified
approval: "It is the recognized doctrine that whoever con-
tracts with a municipality must, at his peril, take notice
of the powers conferred by its charter and whether the
proposed indebtedness is in excess of the limitations
imposed thereby. *Hodges v. City of Buffalo*, 2 Denio
(N. Y.), 110; *Lowell Five Cents Savings Bank v. Inhabit-
ants of Winchester*, 8 Allen (Mass.), 109; *People v. May*,
9 Colo. 80; *Law v. People*, 87 Ill. 385; *French v. City of
Burlington*, 42 Ia. 614.   As said in the case last named,
'any other rule leaves the taxpayer at the mercy of the
officers of the city and contractor, and would render the
constitutional provision nugatory.   Such a result cannot
be contemplated or allowed to prevail.'   And if a recovery
is sanctioned upon a contract like this, on the ground that
it has been subsequently ratified, surely legislative restric-
tion upon corporate powers is in vain.   It would then be
within the power of willing or corrupt officers to accom-
plish by indirection that which is prohibited in the most ex-
plicit terms of the statute or charter.   There may be cases
in which considerations of equity and good faith will im-
pose upon a municipal corporation the duty of returning
property, or its equivalent, where an action would not lie
upon contract, express or implied.   That question is, how-
ever, not presented by the record of this case and is not
decided."

It is claimed by the plaintiff that the parties to the
contract proceeded on the theory that the acts of 1885 and
1887, *supra,* were valid, and, if we understand the argu-
ment on this point, that plaintiff's rights should be meas-
ured by those acts.   In the first place, it is by no means
clear that he would be in any better plight if those acts,
or either of them, were to be taken as the measure of his
rights.   But it would be unprofitable to go into that ques-
tion.   *Ignorantia juris neminem excusat* is a maxim sanc-

tioned by centuries of experience. That it makes a hard-ship in individual instances is a matter of common knowl-edge; but is of little importance, when compared with the evils which would result from measuring the rights of a litigant, not by the law as it is, but by the law as he under-stands it to be.

It is recommended that the judgment of the district court be reversed and the cause remanded for further pro-ceedings according to law.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.