CITY OF FREMONT, APPELLANT, V. DODGE COUNTY ET AL., AP-
PELLEES.

CITY OF SCRIBNER, APPELLANT, V. DODGE COUNTY ET AL., AP-
PELLEES.

VILLAGE OF UEHLING, APPELLANT, V. DODGE COUNTY ET AL.,
APPELLEES.

CITY OF NORTH BEND, APPELLANT, V. DODGE COUNTY ET AL.,
APPELLEES.

FILED APRIL 24, 1936. No. 29600.

*Courtright, Sidner, Lee & Gunderson,* for appellants.

*William H. Lamme* and *Rodney S. Dunlap, contra.*

*Edmund P. Nuss et al., amici curiæ.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

PAINE, J.

Four municipalities brought separate suits in equity against Dodge county, asking for an accounting and payment to each of them of large sums of taxes collected under a county road tax levy over a long period of years. The suits were consolidated for trial, and the district court rendered judgment for the defendant county, and dismissed each of the four suits. The municipalities appealed.

On May 11, 1934, the city of Fremont, as plaintiff, filed a petition in equity against Dodge county and Thomas H. Fowler, county treasurer of said county, setting out, in brief, that plaintiff was incorporated as a village in 1859, and in 1901 became a city of the first class; that from 1887

to 1900 the corporate limits of said city constituted a road district within Dodge county. That Dodge county has levied and assessed a road tax upon all of the property within the city of Fremont, and the taxes have been paid thereon to the county treasurer. That it was the duty of Dodge county to set aside and hold in a trust fund one-half of all road taxes collected upon said property for the years 1887 to 1900, and that between the years 1901 and 1930, inclusive, it was the duty of the defendant county to set aside all of said road tax collected upon property within the city of Fremont, and plaintiff estimates the amount of said trust fund not accounted for by the defendant, Dodge county, to the plaintiff city at between $100,000 and $200,000. That there is now in the hands of the county treasurer a certain amount of said road tax, but the information in regard to the amount is exclusively within the knowledge and possession of the defendant.

Paragraph 12 of said petition sets out a copy of a written demand on the county treasurer, dated May 5, 1934, made by the city of Fremont, demanding, first, two-thirds of the amount of the county road taxes collected within the city of Fremont for the years 1873 to 1878; second, one-half of the amounts collected for county road taxes within the city of Fremont within the years 1879 to 1900, inclusive; and, third, the whole amount collected as county road taxes upon property within the city of Fremont for the years 1901 to 1930, inclusive, and further demanding a full accounting thereof, including the amount of county road tax now on hand collected upon property assessed within the corporate limits of the city of Fremont. It is alleged that the county treasurer, in answer to this formal demand, respectfully declined the same.

It is further alleged that the amendment of 1935 to section 39-206, Comp. St. 1929 (Laws 1935, ch. 88), providing that such section has not heretofore applied to counties under township organization, is a violation of section 10, art. I of the Constitution of the United States, forbidding *ex post facto* laws, or laws impairing the obligation of con-

tracts, and in violation of section 16, art. I of the Nebraska Constitution, in relation to the same matters, and is further a violation of section 4, art. VIII of the Nebraska Constitution, which declares that the legislature shall have no power to release or discharge any county from its proportionate share of taxes due to any municipal corporation. It is alleged that plaintiff has no adequate remedy at law. In the prayer of said petition the city of Fremont, as plaintiff, asks for an accounting from Dodge county, showing all sums of money collected as road taxes within the city of Fremont from 1887 to 1930, inclusive, and for judgment against the defendants for the amount due plaintiff with interest.

To this petition Dodge county filed a 16-page answer, of which only the merest outline can be given. The county charges that the plaintiff city did not file any claim with the board of supervisors; denies all of said petition not admitted; alleges that from 1887 to date the said city has constituted a separate township in Dodge county, and a township road tax has been collected, and all of it paid to Fremont by the county. That from the year 1887 to date the said county has levied and assessed against all of the property in the county, including Fremont, a county road levy, and that the amount collected is unknown to defendant. That the county has assessed and collected on all the property in plaintiff city a street fund tax, all of which has been paid over to the plaintiff city. That, as authorized by chapter 67, Laws 1917, defendant city in 1917 selected and designated county roads which were main traveled roads connecting cities, villages, and market centers, and leading to and from schools, and that the expense of establishment and upkeep of said county roads has been paid for out of the county road fund without the necessity for the issuance of bonds, and that all of the taxes collected for county roads against the property in the plaintiff city have been expended on said roads both within and without the city, and that none of said funds are now in the possession of the defendant county, and that the municipalities of said county have

received and accepted more benefit from the expenditures of said money than any of the other inhabitants of the county, and that the county has spent large sums in maintaining streets and highways within the corporate limits of plaintiff city, and the petition itemizes certain definite sums spent within the limits of plaintiff city in certain years, the total thereof amounting to $30,115.76. Said answer further alleges that said city is, in equity and good conscience, guilty of inexcusable and culpable delay and gross laches in making and presenting its alleged claim, and that same is barred by the statute of limitations, and that all of said funds were used by the defendant county with the full knowledge of plaintiff city, and that said city is estopped and barred from asserting and maintaining its alleged cause of action against the defendant county. That an unprecedented financial depression has existed for several years past, so that the value of farm lands and farm products in said county has greatly depreciated; that many of the farms therein are mortgaged; that many farmers are unable to meet the interest charges now standing against their land. That if timely demand had been made defendant county could without hardship have paid said funds to said city, but that all of said funds have been expended annually as collected by the county for the use and benefit of all the roads of said defendant county. That plaintiff has knowingly acquiesced in and permitted the defendant county, under a claim of ownership and right, to use and expend all of said road taxes, both within and without the limits of plaintiff city, and none of said funds are now in the possession of the defendant county, and plaintiff city, by reason of its course of conduct, is now estopped to assert its alleged demand. That a large number of taxpayers of said county purchased land, relying upon the property being free from any such tax burden, and without any knowledge that a claim could be made by the plaintiff city, and that it would now be inequitable and unconscionable to place charges on the land of said taxpayers to pay a large amount of taxes which have been expended with the acquiescence and con-

sent of the plaintiff city over such a long period of years.

That from 1887 to 1931 the defendant county and its treasurer have acted as agent for the plaintiff city in the collection of all taxes due plaintiff city, and once each year during all of said period has rendered a full accounting and settlement for all of the taxes belonging to plaintiff city so collected, and at the time of each of said annual settlements both plaintiff city and defendant county agreed upon an interpretation of the laws of the state, and, acting thereon, said settlements were made by the said parties upon the basis of the plaintiff not having or claiming any right to any of the taxes so levied. That plaintiff city accepted each settlement so made, and receipted for the same as payment in full of its share of the taxes collected by defendant county, and relying upon such annual settlements and each of them, and upon the construction placed by both parties upon the law in force and effect. That plaintiff city is now estopped to claim said settlements were made under a mistake of law, and defendant county prays that plaintiff's petition be dismissed at plaintiff's costs.

Separate petitions of similar nature were also filed against said county of Dodge by the city of Scribner, the village of Uehling, and the city of North Bend, each located in said county, and separate answers to each were filed by the county of Dodge and by Thomas H. Fowler, its county treasurer. On November 28, 1934, W. J. Courtright filed a motion as attorney for all four plaintiffs, setting out that all four actions involve the same subject-matter, and that the issues of fact and law are practically the same, and that in the interest of economy of expense and time the four cases should be tried together and, if there is an appeal, be briefed and argued together, without prejudice to the rights of any one. There being no objection, an order was made, consolidating the four actions.

A large number of witnesses testified at the trial. Many exhibits, such as maps, charts, and ledger pages, were introduced in evidence. A judgment was entered on April 13, 1935, finding generally for the defendants and against

the plaintiff in each of the four cases. Such actions were thereupon dismissed, and costs in each case taxed to the plaintiff.

The four municipalities, being the appellants in this court, set out a number of assignments of error, which may be set out as follows: The court erred in not finding for the plaintiff in each case for one-half of the full amount of the road tax collected on the property within the respective municipalities levied and collected for the years 1907 to 1930, inclusive, and in not making a specific accounting and finding of the amount of road tax belonging to each plaintiff that was still on hand in the county treasury, and in not ordering the same paid in cash to plaintiffs; the court erred in not rendering judgment for the respective plaintiffs, for the respective amount of their funds which had been appropriated and used by the defendant county, over and above such funds remaining on hand.

The judgment was entered in the case at bar on April 13, 1935, and the legislature of 1935, in House Roll No. 60 (Laws 1935, ch. 88), passed an act, with the emergency clause, which took effect March 6, 1935, which provided "that in counties under township organization all of the moneys heretofore collected as a county road levy and which have not heretofore been paid to any township or municipality in said county, shall be paid by the county treasurer to the county and shall belong to the said county and shall constitute a county road fund, and all of such moneys now in the hands of such county and unexpended, shall be expended by the county board for the benefit of all the county roads as may be deemed best and no part of said moneys, need to be paid to the townships in said counties or to the municipalities within said counties for expenditure by said township officers or said municipalities." Comp. St. Supp. 1935, sec. 29-206.

Did the 1935 legislature violate the Constitution of Nebraska by directing this entire sum of money to remain with the county?

The leading case in the United States on the question of

the control by the legislature of the public funds of the county is the celebrated case of *State v. Baltimore & O. R. Co.*, 12 Gill & J. (Md.) 399, 38 Am. Dec. 317. This case was decided in 1842, and grew out of a railroad charter which provided that, in case the railroad company failed to locate and build its road through three towns in Washington county, the railroad company should in that case forfeit one million dollars to the state of Maryland for the use of Washington county. Upon failure to conform to the charter terms, an action was brought for the million dollars. It was held that the act of the legislature incorporating a railroad company, requiring it to so locate and construct its road, and imposing a forfeiture in case of a failure to so locate it, was not a contract, but a case of penalty, subject as to its enforcement to the will and pleasure of the legislature. As a defense, the railroad company alleged that nothing was due the county, as a later act of the assembly annulled the obligation and released the forfeiture. Washington county treated the case as a clear case of contract covered by constitutional sanction, and, therefore, inviolable by legislative interference. It was held that the legislature had not transcended its constitutional limits in passing the later act of 1840 by which it released the claim of the plaintiff and discontinued the action which had been brought to enforce it. It is stated that Washington county, which is attempting to enforce the claim for a million dollars, is one of the public territorial divisions of the state, established for public political purposes; that the money, if received by the county, would be public property, to be used for public purposes only, and not for the use of her citizens in their private, individual character and capacity. It is held that the remission of the penalty by the state is a legitimate exercise of legislative power. The legislature had the power to remit the penalty accruing to a county in its public capacity as an integral part of the state, for the legislature has a controlling and disposing power over public property. The constitutional provision prohibiting the impairing of contracts does not apply to contracts relating to public proper-

ty, and therefore the act of the legislature in releasing the penalty accruing to a county does not violate the provision in the Constitution prohibiting the legislature from impairing the obligation of contract. This decision was affirmed by the supreme court of the United States in 3 How. (U. S.) 534, 11 L. Ed. 714.

Again, in *Herrick v. Cherokee County,* 199 Ia. 510, 202 N. W. 252, being an action to recover sheriff's collection fee on a mortgage foreclosure. The syllabus holds that a new act repealing another act providing that fees collected by a sheriff at the time of sale under the law which has been repealed, which fees the sheriff turns over to the county, shall be refunded by the county, affects no vested property right, a county being but an arm of the state to aid in its governmental functions, therefore the county and its property are wholly under the control of the legislature. In this case the Iowa court quotes at length from the case of *State v. Board of County Commissioners,* 109 Neb. 35, 189 N. W. 639, which was an action in mandamus to compel the county board of Douglas county to furnish office rooms in the court-house for the municipal courts of the city of Omaha. It was held that a county does not possess the double governmental and private character that a city has. It is governmental in character only, and acts purely as an agent of the state. Property of the county acquired through taxation is property of which the state can direct the use, management and disposition so long as this is done for the benefit of the public in the taxing district. In the case at bar the taxing district is the entire county of Dodge.

In *Slutts v. Dana,* 138 Ia. 244, 115 N. W. 1115, being an action brought on behalf of all taxpayers of the city of Ottumwa to restrain the county treasurer from collecting a certain bond tax levied by the board of supervisors, it was held that the county is a public corporation, which exists only for public purposes, and that a county and its revenue are alike subject to legislative control.

The first purpose one has in examining a statute about which dispute has arisen is to ascertain the intention of the

legislature from the language of the statute itself, and when that is determined it is binding upon all, for to alter the statute by giving its words another meaning is in reality for the court to legislate rather than interpret.

Did the passage of chapter 88, Laws 1935, impair the vested rights of the municipalities in the case at bar?

In 59 C. J. 1179, we find: "Curative statutes, by reason of their remedial and retrospective nature, are applicable not only to past transactions generally, but also to cases pending in the trial court, and, in some jurisdictions, upon appeal."

"It is truly said that the bringing of suit vests in a party no right to a particular decision; and his case must be determined on the law as it stands, not when the suit is brought, but when judgment is rendered." 2 Lewis' Sutherland, Statutory Construction (2d ed.) sec. 677. See, also, Cooley, Constitutional Limitations (6th ed.) 469.

Again, in 1 Lewis' Sutherland, Statutory Construction (2d ed.) sec. 244, statutes are perpetual when no time is stated, but the operation of statutes may be suspended. "A state legislature has a plenary lawmaking power over all subjects, whether pertaining to persons or things, within its territorial jurisdiction, either to introduce new laws or repeal the old, unless prohibited expressly or by implication by the federal Constitution or limited or restrained by its own." A legislature may modify or abolish acts passed by itself or its predecessors; and in section 272, "Where the revising act prescribes its operation or effect upon a previous statute, it will have no other;" and in section 280, "If a conflict exists between two statutes or provisions, the earlier in enactment or position is repealed by the later."

In a very early Nebraska case we find some very pertinent statements. It is said in *State v. Graham*, 16 Neb. 74, 19 N. W. 470, that the county is a quasi corporation, and neither the county nor any officer has any vested right to the moneys which places them out of the reach of the law; that the legislature ought not to change the custody or control or disposition of funds except for a good cause, but of

that the legislature is the sole judge. The revenues of a county are not the property of the county in the sense in which the revenues of a private person or corporation are regarded. The whole state has an interest in the revenue of a county, and for the public good the legislature must have the power to direct its application. The power conferred upon a county to raise a revenue by taxation is a political power, and its application when collected must necessarily be within the control of the legislature.

It is clear that the tax funds in the case at bar were trust funds being held by the county as a trustee for the city of Fremont, and that the rights of said city were at all times subject to the paramount right of the legislature to dictate how said tax funds should be used.

The question then arises whether this cause of action might not be preserved to the plaintiffs under the general saving clause? To answer, we need only quote another paragraph from chapter 88, Laws 1935, as follows: "Provided, further, that the general saving clause of the statutes of Nebraska, section 49-301, Compiled Statutes of Nebraska, 1929, shall not apply to preserve to any municipality or governmental subdivision any right which such municipality or governmental subdivision may have had or claimed with respect to said moneys collected in counties under township organization as a county road levy and which have not heretofore been paid to such municipality or governmental subdivision, and provided further that the provisions of this section as amended shall take effect from and after its passage and approval, and shall be held and taken to apply to any case now pending and in which judgment has not become final in a court of last resort and to any case hereafter brought in any court in this state." Section 2 repealed the original section, and section 4 was the emergency clause, providing that the act took effect from its approval, which occurred on March 6, 1935, while the judgment was entered by the trial court in this case on April 13, 1935.

"Although the general proposition be undisputed that 'an

affirmative statute giving a new right, does not of itself and of necessity destroy a previously existing right,' it will nevertheless have such effect, 'if the apparent intention of the legislature is that the two rights should not exist together.' " Broom's Legal Maxims (9th ed.) 363.

It appears that there are now 27 counties in Nebraska organized under the supervisor plan; that, in addition to Dodge and Gage counties, now engaged in this litigation, the county attorneys of the following supervisor counties, to wit, Adams, Antelope, Buffalo, Butler, Cuming, Custer, Dixon, Fillmore, Franklin, Hall, Kearney, Merrick, Nance, Platte, Seward, Valley, and York, have endeavored to assist this court by filing a joint brief in the case at bar, setting out that similar alleged liability exists in all counties under township organization in the state.

We will assume that the funds the municipalities are seeking to recover were trust funds and did at the time belong to the municipalities as beneficiaries. Yet, at the same time, all of the funds in controversy collected on the county road levy during all these years were at all times public funds. Regardless of the ownership, these public funds were collected from the taxpayers by the county for the specific purpose of improving the roads. The taxpayers, whether inhabitants of the cities or in the county outside of the cities, were interested in good roads leading from the country into the cities, and the municipalities were, at all times, encouraging the county supervisors in making better roads to bring more trade into the cities.

The taxpayers in the cities who paid this county road levy and the officers of these cities, knowing all the facts, stood by year after year, receipting for all sums paid to the cities annually, but made no protest, objection, or complaint because they did not also receive a portion of this county road levy. The county officers, therefore, under this state of facts were justified in expending the taxes received on this county road levy on road improvements which benefited all of the taxpayers of the county.

When substantial benefits have been received under a

contract which it is authorized to make, but which is void because irregularly executed, the city cannot, after having paid the reasonable value of the benefits received, maintain an action to recover them back. A city which has for many years recognized and accepted a water-works system, as fully complying with the contract, cannot afterwards repudiate such recognition and claim damages for failure to comply with the contract. 10 R. C. L. 708, sec. 36.

It will perhaps be found that cases sometimes arise of such a character that they form a law unto themselves, and do not fall within the legal operation of limitation enactments, for it is well known that municipal corporations are not within the ordinary statutes of limitation. Dillon, Municipal Corporations (5th ed.) sec. 1194; 19 R. C. L. 1147, sec. 423.

In *Tiger v. Western Investment Co.,* 221 U. S. 286, it was held that the last act upon the same subject-matter may be considered to assist in interpretation of prior legislation. Therefore, if chapter 88, Laws 1935, shows clearly a certain intent and object, it must be carried out by this court; for as Mr. Justice Story said: "Every technical rule as to the construction or force of particular terms must yield to the clear expression of the paramount will of the legislature." *Wilkinson v. Leland,* 2 Pet. (U. S.) *627, 7 L. Ed. 542.

That there exists a general power in the state governments to enact retrospective or retroactive laws is a point too well settled to admit of question at this day. The only limit upon this power in the states by the federal Constitution is the provision that these retrospective laws shall not be such as are technically *ex post facto.* Thus, in the case of *Watson v. Mercer,* 8 Pet. (U. S.) *88, 8 L. Ed. 876, the court says: "It is clear that this court has no right to pronounce an act of the state legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The Constitution of the United States does not prohibit the states from passing retrospective laws, generally; but only *ex post facto* laws. Now, it has been solemnly settled by

this court that the phrase, *ex post facto* laws, is not applicable to civil laws, but to penal and criminal laws." See *Henry v. McKay,* 164 Wash. 526, 3 Pac. (2d) 145, 77 A. L. R. 1025.

It is true that inequality of tax assessments vitiates an act of the legislature, but inequality of distribution of the proceeds does not, provided the purpose be for the public welfare of the whole taxing district. *Sawyer v. Gilmore,* 109 Me. 169, 83 Atl. 673; *Smith v. Board of Commissioners,* 173 Ind. 364, 90 N. E. 881; *Rinder v. City of Madison,* 163 Wis. 525, 158 N. W. 302.

There is no ground here for the application of constitutional restraints by a municipality against the action of the state legislature. They do not apply as against the state in favor of its own municipalities unless there are clear constitutional provisions to that effect. *City of Trenton v. State of New Jersey,* 262 U. S. 182, 29 A. L. R. 1471.

After a very careful examination of the record in this case, we are convinced that the appellants in the case at bar have no rights in and to the tax funds in litigation, and that the district court was right in dismissing the suits filed by the four municipalities.

AFFIRMED.

GOOD, J., dissents.