STATE OF NEBRASKA V. ERNEST MCCOY.

FILED JUNE 29, 1910.   No. 16,517.

1. **Constitutional Law: EX POST FACTO LAWS.** *Ex post facto* laws include enactments which alter the situation of accused to his disadvantage.

2. ———: ———: **PENAL BOND.** An amendatory act increasing the penalty of a bond essential to the suspension of sentence in a prosecution against a husband for abandonment is *ex post facto* as to prior offenses.

ERROR to the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Exception overruled.*

*William T. Thompson, Attorney General, George W. Ayres, George J. Marshall* and *E. U. Overman,* for plaintiff in error.

*Bernard McNeny* and *George W. Prather, contra.*

ROSE, J.

An information was filed in the district court for Franklin county October 4, 1909, charging that on April 1, 1909, defendant unlawfully abandoned his wife and children. The prosecution was dismissed because the trial court was of the opinion that the legislature, between the dates mentioned, passed an amendatory act which deprived defendant of a substantial right possessed by him before its passage, and that the amendment was *ex post facto* as to the offense charged. For the purpose of settling the law, an exception to the ruling below is presented here under section 515 of the criminal code.

The first section of the statute which defendant was charged with violating declares: "That every person who shall, without good cause, abandon his wife and wilfully neglect or refuse to maintain or provide for her, or who shall abandon his or her legitimate or illegitimate child or children under the age of sixteen years, and wilfully neglect or refuse to provide for such child or children,

28

shall, upon conviction, be deemed guilty of a desertion and be punished by imprisonment in the penitentiary for not more than one year, or by imprisonment in the county jail for not more than six months." Laws 1903, ch. 137, criminal code, sec. 212a.

When the offense charged was committed, section 2 of the act was as follows: "Provided, however, if after conviction and before sentence, such husband or parent shall appear before the court in which conviction shall have taken place, and enter into bond to the state of Nebraska, in the penal sum of two hundred dollars, to the approval of the court as to surety, conditioned that such husband will furnish said wife with necessary and proper home, food, care and clothing, or that such parent will furnish said child or children with necessary and proper home, food, care and clothing, then said court may suspend sentence therein. Said bond shall remain in force as long as the district judge deems the same necessary; and whenever it shall appear to said court, either by affidavit or otherwise, that such husband or parent is, in good faith, furnishing his said wife, child or children with the necessary and proper home, food, care and clothing, then said court may annul said bond and dismiss the prosecution against said husband or parent." Laws 1905, ch. 196.

After the offense charged was committed and before the case was called for trial, section 2 was amended to read as follows: "If at any time after complaint has been filed in the justice court, or the county court of the county in which the offense shall have been committed, such husband or parent shall appear before the court in which he stands charged and shall pay or secure to be paid to the wife or to the legal representative of the child or children other than the accused such sum or sums of money or property as may be agreed upon, provided that such sum so agreed or required to be paid shall not be less than two hundred dollars nor more than one thousand dollars, then said court may discharge the party accused out of custody on his paying the costs of prosecution. And if

after conviction, and before sentence, the accused shall make settlement with his said wife, or with the legal representative of his said children, in the same manner as herein provided for settlement before conviction and shall enter into bond to the state of Nebraska in the penal sum of not less than two hundred dollars nor more than one thousand dollars to the approval of the court as to surety and as to sum, conditioned that such husband will furnish said wife with necessary and proper home, food, care and clothing or that such parent will furnish said child or children with necessary and proper home, food, care and clothing or will so furnish both said wife and child or children on his paying the costs of prosecution, then the said court may suspend sentence therein. Said bond shall remain in force as long as the district judge deems the same necessary; and whenever it shall appear to said court, either by affidavit or otherwise, that said husband or parent is, in good faith, furnishing his said wife, child or children with the necessary and proper home, food, care and clothing, then said court may annul said bond and dismiss the prosecution against said husband or parent." Laws 1909, ch. 165; criminal code, sec. 212b.

The language of the first section has not been changed. At the time of the abandonment charged the second section of the act empowered the district court, in the event of defendant's conviction, to suspend sentence upon his giving bond in the sum of $200 to support his family. This provision was amended in 1909, after the commission of the offense charged and before trial, to authorize the district court, after conviction, to suspend sentence upon his giving bond in a sum not less than $200 nor more than $1,000. In other words, after the commission of the offense charged and before trial, the penalty of the bond to procure a suspension of sentence was increased from $200 to a penal·sum not less than $200 nor more than $1,000. The new statute contained no saving clause, nor has attention been directed to one in the criminal code. Was the change *ex post facto* as to the offense charged?

In support of the exception to the ruling of the trial court it is argued that the first section defining the offense and prescribing penalties has never been changed, and that therefore the amendment did not deprive defendant of any pre-existing right. In this connection counsel for the state cite *Hair v. State*, 16 Neb. 601, and *State v. Wish*, 15 Neb. 448. In these cases it is held that an amendatory act which merely reduces the punishment for a crime is not *ex post facto* as to prior offenses. The provisions which first authorized the district court to suspend sentence were in the second section. It was in the form of a proviso, and limited the first section, which defined the offense and fixed the penalties. Both sections were originally parts of the same act. The legislation changing the penalty of the bond from $200 to a penal sum not less than $200 nor more than $1,000 was an amendment of the proviso, and likewise limited the section defining the offense and fixing the punishment. The amendment was a substantive part of the legislation on the subject of abandonment, and cannot be detached therefrom for the purpose of holding that the first section remained unchanged. When the offense charged was committed, defendant was protected by a statute which authorized the district court to suspend sentence, and at that time the penalty of the bond was only $200. He then had a right to go to trial relying upon the terms of that statute to prevent his imprisonment in case of conviction. The proviso authorizing suspension of sentence limited the section prescribing the punishment, and the act amending the proviso changed the limitation. The question then is: Did the change in the law, when applied to the offense charged, deprive defendant of a substantial right within the meaning of that part of the bill of rights which declares that no *ex post facto* law shall be passed?

*Ex post facto* laws include an enactment "which alters the situation of the accused to his disadvantage." *Medler, Petitioner*, 134 U. S. 160; *Kring v. State of Missouri*, 107 U. S. 221. This interpretation of the constitutional

provision forbidding the enactment of *ex post facto* laws
has been accepted generally·by the courts and text-writers,
and was quoted with approval by this court in an opinion
by the present chief justice in *Marion v. State,* 16 Neb.
349. The statutory right to have the sentence suspended
upon giving bond in the sum of $200, in the event of con-
viction, was a substantial one, affording a means of escap-
ing imprisonment. The amendment permitted the court
to require a bond of $1,000 as a condition of suspending
sentence. It is argued, however, that it was within the
power of the court to release defendant on a $200 bond
under either statute, and that therefore he was not de-
prived of a substantial right. This argument does not
meet the question. When the case was called for trial, it
was within the power of the court to require a $1,000
bond, if the amendment was effective as to prior offenses.
Under the new act the exercise of this power depended on
the will of the court, and not on the wish or financial
ability of the defendant. If he were unable to give bond
in excess of $200, when required by·order of the court to
execute a bond in a larger sum as a condition of having
sentence suspended, the change in the statute would de-
prive him of his liberty in case of conviction. There may
be a difference between a statutory right and the mercy
of a court. In any event the penalty of the bond was
increased. The bill of rights forbids the enactment of *ex
post facto* laws. The command of the constitution is
directed to the legislature. It applies to legislative enact-
ments, and makes no reference to the judgments of courts.
Whether an amendment of the criminal code is *ex post
facto* as to prior offenses depends upon the provisions of
the new act, and not upon the authority or inclination of
the courts to limit its operation to the purview of the stat-
ute amended. In conferring upon the court authority to
require a bond in excess of $200, the legislature intended
that the power should be uniformly exercised without dis-
tinction as to prior and subsequent offenses. The law-
makers did not insert a saving clause in the amendatory

act nor otherwise call upon the court to limit its opera-tion, as to prior offenses, to the terms of the original act. The amendment altered the situation of accused to his disadvantage, and to that extent the legislature exceeded its power. The exception to the ruling of the trial court is therefore

OVERRULED.