IN RE ESTATE OF G. SAM ROGERS.
ERNEST A. ADAMS, COUNTY TREASURER, APPELLANT, V. THE
UNITED STATES NATIONAL BANK OF OMAHA,
EXECUTOR, APPELLEE.

22 N. W. 2d 297

FILED MARCH 22, 1946.   No. 32046.

*Kelso Morgan* and *Joseph D. Houston*, for appellant.
*L. J. TePoel*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

In this action the plaintiff, as county treasurer of Douglas County, seeks to recover taxes, interest, and penalties against the estate of a deceased person under the provisions of sections 77-316 to 77-319, and 77-518, R. S. 1943. The defendant is the executor of the estate. The trial court allowed the claim in part. Plaintiff appeals and defendant cross-appeals. We reverse the judgment of the trial court and remand the cause with instructions.

When this action reached the district court, both parties moved for judgment on the pleadings. The facts are not in dispute. G. Sam Rogers died at Omaha, Nebraska, October 24, 1944. His executor filed an inventory of the assets of the estate on December 21, 1944. A copy of the inventory was furnished to the county assessor, who found that a large amount of intangible personal property had not been returned for taxation by the deceased during the years 1941, 1942, 1943, and 1944. The county assessor computed the tax on the personal property for the years 1941, 1942, and 1943 at the same rate as would have been imposed upon the property had it been returned for taxation, added thereto interest and penalties as provided in the act, and certified the years and amounts thereof to the county treasurer. The principal sum of the taxes so certified amounted

to $9,394.55, interest $1,161.32, and penalties $4,697.21, or a total of $15,253.08. The personal property was added to the tax rolls for the year 1944 and a tax assessed in the amount of $3,510.42. Plaintiff filed a claim against the estate of the deceased and prayed for its allowance. Defendant by answer questioned the regularity of the assessment and levy of the tax for the year 1944, but nevertheless alleged that it was willing and ready to pay said sum of $3,510.42, and prayed that the claim to that extent be allowed. Defendant further questioned the allowance of the claim for the years 1941, 1942, and 1943 in whole and in its several parts for various constitutional and other reasons, which will be stated hereinafter so far as assigned as error here.

The trial court (1) disallowed the claim for taxes for the year 1941; (2) allowed the claim for taxes and interest for the years 1942, 1943, and 1944; and (3) denied the penalty claimed.

Plaintiff appeals presenting the issues that the court erred (1) in denying the penalty provided in the act and in holding that provision of the act to be unconstitutional and void; (2) in holding that the claim for the year 1941 was invalid and in disallowing the same. Defendant cross-appeals and assigns as error the holding (1) that the claim for the taxes for the years 1942, 1943, and 1944 is valid; (2) in holding that the interest clause of the act is valid; and (3) the judgment of the trial court in regard to the body of the tax and interest is contrary to law.

As a result of the pleadings, we are concerned here with the taxes, interest, and penalties for the years 1941, 1942, and 1943.

In the Revenue Act of 1921, the Legislature included a provision providing a method of reassessing "any property" which had been improperly omitted from the tax list, or, if assessed, had been undervalued; in part the procedure provided for an order to show cause to be served upon "any person, company or corporation affected"; it provided for a hearing and for a reassessment under, certain

circumstances. The act contained a limitation that no such action should be taken " * * * unless the same be commenced by December first, next following the date of the original assessment." Laws 1921, ch. 133, art. III, § 4, p. 549; § 77-304, Comp. St. 1929.

In 1941, the Legislature amended and substantially reenacted this section with one material change and simultaneously repealed the original section. It provided that no such action should be taken " * * * unless the same be commenced within three years, next following the date of the original assessment * * * ." Laws 1941, ch. 158, § 2, p. 639. See § 77-314, R. S. 1943.

In the same act the Legislature provided: "The tax commissioner or his subordinates acting in concert with each county judge, upon the filing of the inventory for an estate, shall check the listed personal property, both tangible and intangible, to determine whether it was returned for taxation during the three taxing periods prior to the taxing period during which deceased died. If any personal property, both tangible or intangible, was not returned by the deceased during the three taxing periods or any taxing period included therein, the county judge, acting together with the tax commissioner, his subordinates, the county clerk and the county treasurer of the county, shall compute the tax for the year or years, during which the payment of taxes on said personal property was avoided within the three years prior to the year deceased died, at the total tax rate imposed upon tangible property in the governmental subdivision of the state of Nebraska in which the decedent last maintained his or her legal residence. When the amount of the tax due is so computed, the county treasurer shall then file a claim against the estate for the amount of taxes found due and unpaid; and the county judge shall allow the same as a preferred claim. The tax so paid to the county treasurer shall be by him distributed to the state and its governmental subdivisions, in proportion to the last levies on tangible property for state and other purposes." This act by its terms became effective on May 9, 1941.

Laws 1941, ch. 158, § 1, p. 638. See § 77-307, C. S. Supp. 1941.

In 1943, the Legislature amended and reenacted section 77-307 and simultaneously repealed the original section. Laws 1943, ch. 180, § 1, p. 625; §§ 77-316 to 77-319, inclusive, R. S. 1943. The Legislature by the amended act provided (1) that the county judge upon filing of an inventory in the estate of a deceased person should furnish a copy to the county assessor and in some instances to the Tax Commissioner; (2) that "Upon receipt of copy of inventory the county assessor shall check the listed personal property, both tangible and intangible, to determine whether it was returned for taxation during the three taxing periods prior to the taxing period during which deceased died * * * "; (3) that "If, upon check of the inventory, it is found that any personal property, either tangible or intangible, was not returned by the deceased during the three taxing periods or any taxing period included therein, the county assessor shall compute the tax for the year or years, during which the payment of taxes on the personal property was avoided within the three taxable years prior to the year the deceased died, at the same tax rate as would have been imposed upon the property in the governmental subdivision of the State of Nebraska in which the property should have been returned for taxation, and shall certify the years unpaid and the amount thereof to the county treasurer of such county. To the tax shall be added interest at seven per cent per annum from the date the tax would have been due, if the property had been returned for taxation, plus a penalty of ten per cent of the amount due on tangible property and fifty per cent of the amount due on intangible property. This interest and penalty shall be included in the amount so certified to the county treasurer, as above provided"; and (4) that "Upon receiving the certification above provided, the county treasurer shall forthwith file a claim, against the estate of such deceased person, for the amount of taxes, interest and penalties as certified. * * * The tax so paid to the county treasurer shall be by him dis-

tributed to the state, and its governmental subdivisions, in proportion to the levies on tangible and intangible property, for state and other purposes, for the year or years during which the payment on the personal property was avoided." Laws 1943, ch. 180, p. 625. This act by its terms became effective March 27, 1943.

It will be noted that the Legislature in the 1941 act provided that the tax upon both tangible and intangible personal property should be computed "at the total tax rate imposed upon tangible property." That was the penalty provision of the 1941 act for the failure to make a return of the property for taxation. The 1943 act provided that to the tax there should be added interest from the date the tax would have been due had the property been returned for taxation, plus a ten percent penalty on tangible property and a fifty percent penalty on tangible property. These provisions constituted the penalty of the 1943 act for failure timely to return the property for taxation.

This brings us to plaintiff's contention that the penalty provision is valid and enforceable and the defendant's contention that the penalty of fifty percent on intangible property, when applied to an act done prior to the enactment of the 1943 act, is ex post facto and void.

Defendant relies upon the provisions of section 16, article I, of our Constitution, which is: "No bill of attainder, ex post facto law, or law impairing the obligation of contracts, or making any irrevocable grant of special privileges or immunities shall be passed."

The question then is: Is the act, when applied to the years prior to its passage, in conflict with the constitutional prohibiton against the passage of an "ex post facto law"?

The penalty imposed by this act is not one in the nature of punishment for the commission of a criminal offense. The penalty is one levied as an inducement to the return of property for taxation. Such an act is not an ex post facto law in the constitutional sense.

The texts state: "An ex post facto law is one which imposes a punishment for an act which was not punishable

when it was committed, imposes additional punishment, or changes the rules of evidence, by which less or different testimony is sufficient to convict. It is essential to an ex post facto law, therefore, that it relate to criminal matters, * * *." 12 C. J., Constitutional Law, § 803, p. 1097. "It is a well settled principle of construction, which is established by a long line of cases, that the constitutional prohibition against the passage of ex post facto laws applies only to penal or criminal matters. Laws which affect civil rights or which regulate civil remedies are not within the rule which prohibits the passage of ex post facto laws." 12 C. J., Constitutional Law, § 805, p. 1099. See, also, 16 C. J. S., Constitutional Law, §§ 435, 437, pp. 886, 889; 11 Am. Jur., Constitutional Law, § 351, p. 1179.

Similar provisions are found in the Constitution of the United States. Section 9, article I, of the Constitution of the United States provides: "No bill of Attainder or ex post facto Law shall be passed." This is a restraint upon the power of the Congress. Section 10, article I, provides: "No State shall * * * pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts * * * ." This is a limitation upon the legislative power of the states.

In Calder v. Bull, 3 Dallas 386, Chase, J., said: "The prohibitions not to make any thing but gold and silver coin a tender in payment of debts, and not to pass any law impairing the obligation of contracts, were inserted to secure private rights; but the restriction not to pass any *ex post facto* law, was to secure the person of the subject from injury or punishment, in consequence of such law. If the prohibition against making *ex post facto* laws was intended to secure personal rights from being affected or injured by such laws, and the prohibition is sufficiently extensive for that object, the other restraints I have enumerated were unnecessary, and therefore, improper; for both of them are retrospective."

In Calder v. Bull, *supra*, Paterson, J., said:

"Again, the words of the constitution of the United States are, 'That no State shall pass any bill of attainder, *ex post*

*facto* law, or law impairing the obligation of contracts.' Art. 1, s. 10. Where is the necessity or use of the latter words, if a law impairing the obligation of contracts, be comprehended within the terms *ex post facto* law? It is obvious, from the specification of contracts in the last member of the clause, that the framers of the constitution did not understand or use the words in the sense contended for on the part of the plaintiffs in error. They understood and used the words in their known and appropriate signification, as referring to crimes, pains and penalties, and no further. The arrangement of the distinct members of this section, necessarily points to this meaning. * * * on full consideration, I am convinced, that *ex post facto* laws must be limited in the manner already expressed; they must be taken in their technical, which is also their common and general, acceptation, and are not to be understood in their literal sense."

In Calder v. Bull, *supra,* Iredell, J., said: "Still, however, in the present instance, the act or resolution of the legislature of Connecticut, cannot be regarded as an *ex post facto* law; for the true construction of the prohibition extends to criminal, not to civil cases."

In Kring v. Missouri, 107 U. S. 221, 27 L. Ed. 506, 2 S. Ct. 443, the Supreme Court of the United States said: "It will be observed that here are grouped contiguously a prohibition against three distinct classes of retrospective laws; namely, bills of attainder, *ex post facto* laws, and laws impairing the obligation of contracts. As the clause was first adopted, the words concerning contracts were not in it, because it was supposed that the phrase *ex post facto* law included laws concerning contracts as well as others. But it was ascertained before the completion of the instrument that this was a phrase which, in English jurisprudence, had acquired a signification limited to the criminal law, and the words 'or law impairing the obligation of contracts' were added to give security to rights resting in contracts."

The historical background of the meaning of the ex post facto provision is clear. The Supreme Court of the United

States has had before it the identical question which we have here in Bankers Trust Co. v. Blodgett, 260 U. S. 647, 67 L. Ed. 439, 43 S. Ct. 233. There a state statute imposed a penalty for a five-year period upon estates of decedents for nonpayment of taxes during the lifetime of the owner. There it was claimed that one of the years for which the penalty was claimed was before the passage of the act, and hence as to that year the act was an ex post facto law. The Supreme Court of the United States said: "The contention is untenable. The penalty of the statute was not in punishment of a crime, and it is only to such that the constitutional prohibition applies. It has no relation to retrospective legislation of any other description." See, also, City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771. Our decisions in Marion v. State, 16 Neb. 349, 20 N. W. 289, 396, and State v. McCoy, 87 Neb. 385, 127 N. W. 137, are in accord, for those decisions had to do with the criminal code and the punishment involved.

The act is not vulnerable to the objection that, in the application of the penalty provision to the years prior to its passage, it is an ex post facto law in the constitutional sense.

All property in this state, not expressly exempt therefrom, is subject to taxation. Constitution, art. VIII, § 2; § 77-201, R. S. 1943. The obligation to return property for taxation is a continuing one. That obligation rested upon the deceased during his lifetime both before and after the passage of the act in question. The penalty provision of the act is not a tax levied upon property for the years prior to the enactment and as a result of the act in question. The penalty provision is no part of the tax. Steinacher v. Swanson, 131 Neb. 439, 268 N. W. 317; Tukey v. Douglas County, 133 Neb. 732, 277 N. W. 57. The penalty provision is attached because the taxpayer in his lifetime failed to return his property for taxation. That failure occurred after as well as before the passage of this act, and hence the imposition of the penalty is not even retroactive.

Defendant next argues that the penalty provision is void

as repugnant to section 5, article VII, of our Constitution. The provision is: "All fines, penalties, and license moneys, arising under the general laws of the state, shall belong and be paid over to the counties respectively, where the same may be levied or imposed, and all fines, penalties and license moneys arising under the rules, by-laws, or ordinances of cities, villages, towns, precincts, or other municipal sub-division less than a county, shall belong and be paid over to the same respectively. All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of the common schools in the respective sub-divisions where the same may accrue." Defendant assumes that the statute directs that the entire amount of taxes, interest, and penalties shall be distributed between the state and its political subdivisions, the same as the taxes would have been distributed had the property been returned for taxation and the taxes paid. Or as defendant states, " * * * the penalty is distributed as a general tax, and is not appropriated to the school fund." Defendant cites authorities based on that theory. This is an erroneous construction of the act. It clearly distinguishes between the tax, the interest, and the penalty. It then directs that "The tax so paid to the county treasurer shall be by him distributed to the state, and its governmental subdivisions * * * ." § 77-319, R. S. 1943. The statute is silent as to the distribution of the interest and the penalties.

Defendant further assumes that the penalties provided by the act are within the scope of the penalties which the constitutional provision states shall be appropriated exclusively to the use and support of the common schools. We do not decide that question. Assuming that this position is correct, it does not follow that the penalty provisions of this act are in conflict with the constitutional provision. The constitutional provision requires that "All fines, penalties, and license moneys, arising under the general laws of the state, shall belong and be paid over to the counties respectively, where the same may be levied or imposed * * * ." Plaintiff seeks to enforce the payment to him as county

treasurer of the tax, interest, and penalties. There is no conflict there. The Constitution further says that "All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of the common schools * * * ." We think it need not be demonstrated that the act under question is not an appropriation bill, nor does it seek to appropriate or direct the allocation of the funds collected as penalties under it. The constitutional provision here considered relates to whom the penalties shall be paid and to whom appropriated. It does not relate to the imposition of the penalty. We see no conflict between the constitutional provision and the act under consideration.

The act is not vulnerable to the constitutional attack just considered. We conclude that the trial court erred in denying the penalty recovery which plaintiff sought.

Plaintiff's second assignment of error presents the question as to whether or not, under the facts of this case, taxes for the year 1941 may be included. The statute provides that the county assessor shall determine whether the property "was returned for taxation during the three taxing periods prior to the taxing period during which deceased died * * * ." § 77-317, R. S. 1943. And if it is found that the property "was not returned by the deceased during the three taxing periods or any taxing period included therein, the county assessor shall compute the tax for the year or years, during which the payment of taxes on the personal property was avoided within the three taxable years prior to the year the diseased died * * * ." § 77-318, R. S. 1943. Plaintiff contends that the taxing period or year is the calendar year. Defendant contends that the taxing period begins on April 1 of each year, that being the date generally referred to in the statutes. See § 77-1201, R. S. 1943, as amended (Laws 1945, ch. 186, p. 577) ; §§ 77-1211, 77-1212, 77-1226, and 77-1231, R. S. 1943, as amended Laws 1945, ch. 187, p. 578. Defendant further contends that it ends when the Board of Equalization adjourns and the levy is made in August of each year, and since deceased died in October 1944, that the three taxing periods

prior thereto were 1942, 1943, and 1944.

Obviously, the general terms "taxing periods" and "taxable years" were used by the Legislature so as to make the law applicable to varying provisions for taxation. The beginning of the taxing period for all divisions of government may not always be the same. For instance, the beginning of the period may be different in the case of taxes levied by cities operating under home rule charters. For the purposes of the instant case we accept the view of the defendant that the period begins on April 1 of each year.

We cannot accept defendant's contention that the taxing period ends in August. To do so would require us to hold that the Legislature intended the law to apply only in those cases where death occurred between April 1 and sometime in August, for the initial inquiry is whether or not the property was returned for taxation during the three taxing periods "prior to the taxing period during which deceased died." On defendant's theory the deceased did not die during a taxing period, and hence if we were to follow that through to its logical result, the act would not apply to the property here in question at all.

In the title of the act reference is made to "taxing periods or taxable years" meaning one and the same thing. In section 77-317 the reference is to taxing period or periods. In section 77-318 the terms "taxing periods" and "taxable years" are used. Clearly the Legislature meant that a taxing period was a year in length. Accordingly, deceased died in the taxing period of 1944 and the three taxing periods or years prior thereto were 1941, 1942, and 1943. The trial court erred in not including the year 1941 in its calculations and judgment.

This brings us to the assignments of error presented by the defendant in its cross-appeal.

The first proposition is that the act puts executors and administrators in one class for the purposes of taxation and all others in another class; and that it is an arbitrary classification and violates section 18, article III, of the Constitutoin and section 1, article VIII, of the Constitution, and

specifically the following parts of said provisions: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * In all other cases where a general law can be made applicable, no special law shall be enacted." Also, " * * * but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property."

Defendant cites section 77-518, R. S. 1943, which authorizes county assessors to add omitted property to the tax rolls "for the current year." It argues that sections 77-316 to 77-319, R. S. 1943, are the only sections which authorize the addition of omitted property for prior years, that that is limited to executors and administrators, whereas " * * * in the case of all other persons it can be added only for the current year."

As we have pointed out herein, all property not expressly exempt is subject to taxation. The act in question does not subject this property to taxation. It was at all times subject to taxation. Likewise, as we have pointed out, the Legislature in 1921 provided a procedure whereby "any property" which had been improperly omitted from taxation could be placed on the tax rolls. Laws 1921, ch. 133, art. III, § 4, p. 549. By the 1941 amendment that procedure must be commenced within three years, next following the date of the original assessment. Laws 1941, ch. 158, § 2, p. 639. See § 77-314, R. S. 1943. Obviously, the Legislature did not consider that procedure to be adequate to reach property that was disclosed to be in the hands of an administrator or executor. The act under consideration was enacted to meet that procedural need—a need well demonstrated by the facts of the instant case. The two acts just discussed provide a procedure to reach property subject to taxation, but omitted from taxation during three past years. Section 77-518, R. S. 1943, applies to the current year.

The act in question is a general and not a special law and by its express terms requires that the tax shall be computed

"at the same tax rate" as would have been imposed upon the property had it been returned for taxation. It does not violate the provisions as to uniformity nor create a separate classification. It is not vulnerable to the constitutional attack made upon it.

Section 77-207, R. S. 1943, provides: "All delinquent taxes shall draw interest at the rate of seven per cent per annum from the date they become delinquent * * * ." The act in question provides that "To the tax shall be added interest at seven per cent per annum from the date the tax would have been due, if the property had been returned for taxation * * * ." § 77-318, R. S. 1943.

We have held that the various impositions made by legislative authority for failure to pay taxes when due, whether designated as interest, penalties, costs, or anything else, are in fact penalties and not debts, and are in reality no part of the tax. Steinacher v. Swanson, *supra;* Tukey v. Douglas County, *supra.*

The penalty of interest imposed by section 77-207, R. S. 1943, is that which the Legislature has fixed as an inducement to pay taxes and is levied for a failure to pay them. It applies to the tax on property that has been returned for taxation. The interest that is imposed by section 77-318, R. S. 1943, is a part of the penalty imposed for failure of the property owner during his lifetime to return the property for taxation. To hold that the penalty in the latter case cannot be greater than the former would be tantamount to holding that the Legislature cannot impose any penalties for failure to return property for taxation, and that the property owner who fails to perform an essential duty to his government and return his property for taxation must be accorded the same treatment, so far as penalties are concerned, as is the property owner who performs the duty but fails to pay the tax. We have not been cited to a constitutional provision making that requirement. See Tukey v. Douglas County, *supra.*

Defendant's third assignment is that the body of the tax and interest thereon is contrary to law and void. What we

have said heretofore disposes of that assignment.

Summarizing, we sustain the assignments of error made by plaintiff. We find no merit in those made by defendant on cross-appeal.

The judgment of the district court is reversed and the cause is remanded with directions to enter a judgment for plaintiff as prayed in his petition.

REVERSED.

PAINE, J., participating on briefs.