WILLIAM FULTON, PLAINTIFF IN ERROR, V. THE CITY OF
LINCOLN, DEFENDANT IN ERROR.

**Cities of the Second Class :** CONTRACT FOR GRADING STREET.
The council of a city of the second class has no power to con-
tract for the grading of a street until they first shall have en-
acted an ordinance for the said improvement, nor except such
contract be let to the lowest bidder, after publication of notice
and fair competition.

ERROR to Lancaster county district court. The ac-
tion there was brought by Fulton to recover the sum
of $495.05 for work and labor performed by him in
the grading of M street, in the city of Lincoln, be-
tween 16th and 18th. Upon the trial below defendant
moved for a non-suit, which was sustained by the
court, POUND, J., presiding, to which plaintiff took ex-
ceptions. Plaintiff alleges here that the court erred
in sustaining defendant's motion for a non-suit; that
the court erred in refusing to allow the plaintiff to
prove by his own testimony who directed him to per-
form the work on M street, in said city; that the court
erred in refusing to allow the plaintiff to prove whether
or not an estimate of the work was made by the city
engineer and submitted to the council; and that the
court erred in refusing to allow plaintiff to prove that

NOTE.—When the statute prescribes a particular mode in which
the corporation is to act that mode is exclusive. *Hurford v. Omaha,*
4 Neb., 350. The fact that certain provisions of an ordinance are
void does not authorize the court to declare void those provisions
which relate to the subject matter of the ordinance when they are
distinct and separate from those which are void and useless. *State,*
*ex rel. Hahn, v. Hardy,* 7 Neb., 377. See generally as to powers, du-
ties, and liabilities of cities, *Nebraska City v. Lampkin,* 6 Neb., 27.
*City of Omaha v. Olmstead,* 5 Neb., 446. *City of Brownville v.*
*Cook,* 4 Neb., 103. *Turner v. Althaus,* 6 Neb., 54. *Wheeler v. City*
*of Plattsmouth,* 7 Neb., 270. *State, ex. rel. School District, v. Omaha,*
7 Neb., 267.—REP.

he presented his account to the city council of said city before the commencement of this action.

*N. S. Scott*, for plaintiff in error.

A resolution has ordinarily the same effect as an ordinance. Both are legislative acts. *Sower v. City of Philadelphia*, 35 Penn. State, 231. *Gas Company v. San Francisco*, 9 Cal., 453. *Municipality v. Cutting*, 4 La. Ann., 335. A creditor of a city is not bound to look into the regularity of the proceedings of the council when dealing with the city. Dillon Mun. Corp., § 397. *Bigelow v. City of Perth Amboy*, 25 New Jersey Law., 297.

*Harwood & Ames*, for defendant in error.

1. All regulations of law must be strictly observed, or the city will not be bound, and it follows that the first error assigned in the plaintiff's motion for a new trial is groundless, it being immaterial who directed plaintiff to do the work, or whether he did it without direction. *Zottman v. San Francisco*, 20 Cal., 96. *Loker v. City of Brookline*, 13 Pick., 343. *Jones v. Lancaster*, 4 Pick., 149. *Woods v. Waterville*, 5 Mass., 294. Dillon Mun. Corp., § 373, *note*. Such being the case, it is unimportant whether there was an estimate by the city engineer, and whether the plaintiff's claim was ever presented for allowance to the city council, and the court committed no error in excluding evidence of either fact.

2. Acceptance and user do not obligate the city. Dillon Mun. Corp., § 386. *Wilson v. School District*, 32 N. H., 118, 125. *State v. Hancock*, 45 N. H., 528. *Loker v. Brookline*, 13 Pick., 343. *Reilly v. City of Philadelphia*, 60 Pa. St., 467.

COBB, J.

The city of Lincoln is a city of the second class under the general laws of this state. At the date of the transactions upon which this suit is founded, the law granting and defining the powers and prescribing the liabilities and duties of all corporations of that character and grade was contained in chapter 9 of the General Statutes. Under the provisions of said chapter the mayor and council of such city were authorized and empowered " to enact ordinances " for certain purposes, among others, " to open and improve streets," etc. § 31, p. 142, Gen. Stat.

Section 32 of said chapter is in the following words : " Before the city council shall make any contract for building bridges or side-walks, or for any work on streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate ; and in advertising for bids for any such work the council shall cause the amount of such estimate to be published therewith."

The mayor and council derive all their power to bind the city from this statute, which is usually and not inappropriately called their charter. This charter is a public law, of the provisions of which all persons must take notice. The powers of the mayor and council derived from this statute are limited and the manner of their exercise qualified by the several provisions of the same, all of which must be taken notice of by all persons contracting or dealing with the city.

Their power to contract for the grading of " M " street would depend upon their having previously

passed an ordinance for such improvement, either specifically or as a part of a general system of improvements adopted by them, and upon an estimate of the cost of such specific improvement or work having been made by the city engineer and submitted to the council. And as to the manner of making such contract, I think it equally clear that the mayor and council can only bind the city by a contract made with the lowest bidder therefor after publication of notice and fair competition.

On the trial the plaintiff introduced in evidence over the objection of defendant an ordinance of the city in the following language:

" Ordinance No. 90.

" An ordinance to provide for the grading of the streets, avenues, and alleys of the city of Lincoln.

" Section 1. Be it ordained by the mayor and councilmen of the city of Lincoln that whenever the majority of the owners of lots on any street, avenue, or alley, or any part thereof, shall petition the city council of said city to cut down, fill up, or grade any street, avenue, or alley, or any part thereof in the said city, the majority, if they think proper, of the city council shall pass an ordinance to that effect, which ordinance shall set forth the particular locality where such cutting down, filling up, or grading is required to be done, and the time that is allowed for completing the same; and the publication of such ordinance in one of the newspapers of the city for one week shall be deemed a sufficient notice to the owners or holders of lots fronting on any such street, avenue, or alley for any such cutting down, filling up, or grading.

" Section 2. All such filling, cutting down, or grading shall be in conformity with the grade of the street, avenue, or alley under the direction of the street com-

missioner, and all expenses of filling up, cutting down, or grading shall be paid by owners or holders of lots fronting where such filling up, cutting down, or grading is to be done.

"Section 3.   If the owners or holders of any such lot or part of a lot shall neglect to fill up, cut down, or grade his street, avenue, or alley in conformity with the order of the city council published as aforesaid, the street commissioner shall contract for the same to be done at the expense of the city, and shall make his report of the expense incurred therefor to the city council, and the city council shall levy a special tax on such lot or part of lot in front of which the street commissioner may have contracted for any such filling up, cutting down or grading, which tax shall be of sufficient amount to cover the expenses thereof, together with all costs or expenses, and immediately after such levy, the city treasurer shall advertise and sell the same according to law in such case made and provided.

"Section 4.   This ordinance shall take effect and be in force from and after the publication according to law.   Approved October 14, 1872."

The plaintiff also introduced, over the objection of the defendant, the records of the city as follows:

"COUNCIL CHAMBER, October 14, 1872.

"Council met at Mr. Sherwood's office at call of the Mayor.   Council called to order by the Mayor.   Present: Mayor Brown, Messrs. Gosper, Sherwood, McLaughlin, and Owen.   Absent: Fairbank and Scoggin. Petition of C. E. Loomis and others for grading M street between 16th and 18th streets.   Granted and work ordered done.   The following resolution was introduced and passed: Be it resolved by the Mayor and Councilmen of the city of Lincoln, that M street between 16th and 18th streets be ordered to be graded in accordance with Ordinance No. 90, the requisite

petition having been procured and placed on file. Adjourned.    Approved Nov. 9, 1872.

"THOMAS J. CANTLON,

"City Clerk."

Without stopping to comment upon the entire absence of proof of the publication of either of the foregoing ordinance or resolution, it is perhaps sufficient to say that their framers evidently labored under a gross mistake as to the law under which they were acting. It is evident that they understood the law to be that all such improvements of streets as that in question were to be paid for by the owners of abutting property, and (they sought by means of ordinance No. 90 to so provide) that all that was necessary was to procure a petition signed by "a majority of the owners of lots on any street, avenue, or alley, or any part thereof," to have all the hills cut down and valleys levelled up without cost to the general taxpayers.    True, lest the people should be too unanimous and enthusiastic to have all the rough places made smooth at once, they reserved to themselves, or as they express it, to the majority, to pass an ordinance in each case "to that effect, which ordinance shall set forth the particular locality where," etc.

The plaintiff in error cites *Sower v. The City of Philadelphia*, 35 Penn. St., 231; *Gas Co. v. San Francisco*, 9 Cal., 563; and *Municipality v. Cutting*, 4 La. Ann., 335., in support of the proposition that the resolution of October 14, 1872, is of the same effect as an ordinance.

The Pennsylvania case is somewhat in point.    The legislature of that state passed an act for the consolidation of the city of Philadelphia, by the seventh section of which it was provided that "whenever councils shall deem the public exigencies to demand it, they may order by ordinance any street laid upon any of the public plans of the city to be opened," etc.   Acting under the author-

ity of this statute, the city councils passed a joint reso-
lution for the opening of Wilson street. Sower, the
owner of property through which said street was about
to be opened, prayed for an injunction, etc. In the
opinion the court say: "The next objection, that the
order for opening was by joint resolution and not by
ordinance, seems to be disposed of by uniform legisla-
tive usage in the city government, and by a fair anál-
ogy to the constitutional practice of the state legisla-
ture. Both joint resolutions and ordinances are passed
by both councils and approved by the Mayor * *
By * * the act of eleventh March, 1879, the laws,
ordinances, regulations, and constitutions of the city
must be published and recorded, and by the 44th sec-
tion of the consolidation act, the laws and ordinances
of the city must be published for the information of
the citizens. It is a legislative act, a law, and it mat-
ters not whether it be called a joint resolution or an
ordinance."

In the *First Municipality v. Cutting*, which was a crim-
inal prosecution against the defendant for selling gro-
ceries in the meat and vegetable market of New Orleans
contrary to an ordinance or regulation of the city, the
court say: "The first and most material objection
which has been taken to the validity of this ordinance
or by-law is, that it purports by its terms to be a reso-
lution, and as such has not the force and effect of a
legal ordinance or by-law. We considered this objec-
tion in the case of *The First Municipality v. Devron*, re-
cently decided, and it was not without difficulty that
we came to the conclusion in favor of its legality. The
conclusion was founded on the indefinite character of
the powers given to the mayor and city council of the
late city of New Orleans by the several statutes on that
subject. No form in which their legislative acts are
to be exercised is given in any of the statutes. They

have authority to make and pass by-laws or ordinances; and, in one instance, fines imposed by the *regulations* and by-laws of the corporation are recognized as valid. * * * In another instance provision is made for the recovery of fines incurred for offenses committed against the ordinances and regulations enacted by the city council. Considering, therefore, that the ordinance contained a prohibition with a penalty attached, it was in fact a by-law or *regulation*, and the form made use of in enacting it did not render it void as such. It was signed by the mayor, and no valid objection was made to the power of the council to enact it."

These cases fall far short of sustaining the position taken. The provisions of our statute on this subject are very plain. The council is authorized to act on the subject, and the manner of its acting is clearly prescribed—not by enacting by-laws, making regulations, or passing resolutions, but by enacting ordinances, and nothing is left to be construed by the analogies of state legislation.

The case cited from 9th California was reversed in the same court in *Zottman v. San Francisco*, 20 Cal., 96.

In both the Pennsylvania and Louisiana cases considerable stress is laid upon the fact that the resolution, in each of those cases, was signed or approved by the mayor, and that the modes of passing a resolution and enacting an ordinance were identical, and in the Pennsylvania case that the joint resolutions were required to be published as laws. But in this state there is no provision of law requiring resolutions of the council to be approved by the mayor or published, and in point of fact the resolution which it is sought to have do duty as an ordinance in this case was neither approved by the mayor or published.

We have seen that the city council was limited to the enacting of ordinances as the means of providing

for the improvement of streets, etc., and I do not think it will be seriously urged that an ordinance, providing that all the streets, avenues, and alleys of a city should be cut down, filled up, or graded, upon the contingency of the majority of the lot owners petitioning therefor, comes within that requirement.    But even if it does, we are met by the further contingency that "the majority, if they think proper, of the city council shall pass an ordinance to that effect."

The city council, then, never having enacted an ordinance for the purpose of grading M street between Sixteenth and Eighteenth streets, either specifically or as a part of any defined system of improvements, there was no error in the district court making any of the several rulings complained of by the plaintiff in error.

There was no error in the district court refusing to allow the plaintiff to prove by his own testimony who directed him to perform the work on M street, because in the absence of an ordinance providing for the improvement of said street no one could bind the city by giving such direction.

There was no error in the court refusing to allow the plaintiff to prove by his own testimony whether or not an estimate of the work was made by the city engineer and submitted to the council.    It is not an estimate of the work, but of *the cost* of the work, that is required to.be made by the city engineer, and there having been no ordinance enacted providing for the improvement of the street in question, such testimony was quite immaterial.    And so also of the proof, refused by the court, of the presentation of his account for such work by the plaintiff.

There being no error in the record, the judgment of the district court is affirmed.

JUDGMENT AFFIRMED.