CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, A CORPORATION, APPELLANT, V. CITY OF RANDOLPH, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

81 N. W. 2d 159

Filed February 8, 1957. No. 34068.

*Neely, Otis & Neely,* for appellant.

*Joseph G. Rodgers, Van Pelt, Marti & O'Gara,* and *Warren K. Dalton,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action brought to secure an adjudication that a special assessment for paving, levied by the defendant city of Randolph against plaintiff's property, is null and void and is not a lien thereon.

Plaintiff seeks to enjoin the collection of the assessment; to cancel it of record; and to quiet its title to property against the special assessment.

The special assessment was levied upon that part of plaintiff's right-of-way "lying and being within the boundaries of Paving District #4, Randolph, Nebraska."

The defendant city is a city of the second class. The county treasurer is also a defendant. The issues presented here are between the plaintiff and the city. They will accordingly be referred to as plaintiff and city.

The trial court entered judgment for the defendants. Plaintiff appeals. We reverse the judgment of the trial court and remand the cause with directions to render judgment in accord with this opinion.

The history of the proceedings was introduced in evidence by stipulation and furnishes the fact evidence involved.

Preliminary to a statement of the factual situation, it may be well to point out that the general powers of the city to make the improvements here involved are set out in section 17-509, R. R. S. 1943, subject, however, to the proviso "that none of the improvements hereinbefore named shall be ordered except as provided in sections 17-510 to 17-512." Those sections provide:

"Whenever a petition signed by sixty per cent of the resident owners, owning property directly abutting upon the street, streets, alley, alleys, public way or public grounds proposed to be improved, shall be presented and

filed with the city clerk or village clerk, petitioning therefor, the governing body shall *by ordinance* create a paving, graveling or other improvement *district or districts,* and shall cause such work to be done or such improvement to be made, and shall contract therefor, and shall levy assessments on the lots and parcels of land abutting on or adjacent to such street, streets, alley or alleys especially benefited thereby *in such district* in proportion to such benefits, to pay the cost of such improvement." (Emphasis supplied.) § 17-510, R. R. S. 1943.

"Whenever the governing body shall deem it necessary to make any of the improvements named in section 17-509, said governing body shall *by ordinance* create paving, graveling or *other improvement district or districts,* and after the passage, approval and publication of such ordinance, shall publish notice of the creation of any such district or districts for six days in a legal newspaper of the city or village, if a daily newspaper, or for two consecutive weeks, if the same be a weekly newspaper. If a majority of the resident owners of the property directly abutting on the street, streets, alley or alleys to be improved, shall file with the city clerk or the village clerk within twenty days after the first publication of said notice, written objections to the creation of such district or districts, said improvement shall not be made as provided in said ordinance; but said ordinance shall be repealed. If said objections are not filed against the *district* in the time and manner aforesaid, the governing body shall forthwith cause such work to be done or such improvement to be made, and shall contract therefor, and shall levy assessments on the lots and parcels of land abutting on or adjacent to such street, streets, alley or alleys especially benefited thereby *in such district* in proportion to such benefits, to pay the cost of such improvement." (Emphasis supplied.) § 17-511, R. R. S. 1943.

"The council or board of trustees shall have power by a three-fourths vote of all members of such council or

board of trustees to enact *an ordinance* creating a paving, graveling or other improvement district, and to order such work to be done without petition upon any main thoroughfare that connects with or forms a part of the state highway system, and shall contract therefor, and shall levy assessments on the lots and parcels of land abutting on or adjacent to such street, alley or alleys, especially benefited thereby *in such district* in proportion to such benefits, to pay the cost of such improvement." (Emphasis supplied.) § 17-512, R. R. S. 1943.

There is no contention here that any of the procedures involved in this litigation purport to rest on the authority of section 17-512, R. R. S. 1943.

We state first in chronological summary the proceedings here recited. When necessary we shall later refer more in detail to particular matters.

We shall refer to the council meaning the governing body of the city, including the mayor.

The first proceeding rests upon a petition for paving on five named streets. This was presented on July 19, 1951, to a special meeting of the council and found sufficient. Ordinance No. 301 creating Street Improvement District No. 101 was passed and published. This is a proceeding under section 17-510, R. R. S. 1943.

On October 2, 1951, the city created Street Improvement District No. 104 by Ordinance No. 302. This was a proceeding under section 17-511, R. R. S. 1943. It provided for the paving of one street. This district is not directly involved in this litigation except as it will be necessary to refer to it as a part of the description of later action taken by the council.

On October 12, 1951, the council adopted Ordinance No. 305 creating Street Improvement District No. 106. This action was taken under the authority of section 17-511, R. R. S. 1943. The ordinance was published on October 18, 1951, and simultaneously the notice of the creation of the district was published. This proceeding

is directly challenged here by the plaintiff on the ground that the notice of the creation of the district must be given *"after* the passage, approval and publication of such ordinance." (Emphasis supplied.)

On November 6, 1951, pursuant to a petition, the council passed Ordinance No. 306 creating Street Improvement District No. 107. This related to one street. It was a proceeding under the authority of section 17-510, R. R. S. 1943.

Also on November 6, 1951, pursuant to a petition, the council passed Ordinance No. 307 creating Street Improvement District No. 108. This was a proceeding under the authority of section 17-510, R. R. S. 1943. The plaintiff contends that property described in the petition was, in part, not actually paved.

On December 19, 1951, at a special meeting of the council a *resolution* was passed consisting of two sections.

Section 1 provided that District No. 104 be designated as Street Improvement District No. 2 and thereafter in all proceedings relative thereto that it be referred to as Street Improvement District No. 2. This district is not involved in the assessment here in litigation.

Section 2 provided: "That Street Improvement District designated as No. 101 as set out in Ordinance No. 301; that Street Improvement District designated as No. 106 as set out in Ordinance No. 305; that Street Improvement District designated as No. 107 as set out in Ordinance No. 306; that Street Improvement District designated as No. 108 as set out in Ordinance No. 307 be combined and be known as Street Improvement District No. 4 and hereafter in all proceedings relative thereto be referred to as Street Improvement District No. 4."

We shall hereafter refer to these street improvement districts by use of the word District and its number.

At the same meeting the council adopted a resolution approving plans and specifications for the paving of streets and an estimate of the cost of construction in Districts 2 and 4. Also at the same meeting the council

approved a notice to bidders which referred to the construction of paving and work incidental thereto in Districts 2 and 4. This notice was published.

On January 14, 1952, at a special meeting of the council, bids were opened and tabulated. A resolution was passed accepting the bid of one bidder as to both Districts 2 and 4 and authorizing a contract for the construction of paving and incidental work in Districts 2 and 4.

On February 5, 1952, the council at a regular meeting approved the execution of the contract and the performance bond of the contractor. Here again the reference is to Districts 2 and 4.

On June 11, 1952, the engineers submitted a letter to the mayor and council in which they certified that the construction of pavement and work incidental thereto in Districts 2 and 4 had been completed according to contract, and set out the costs allocated to the two districts.

On June 12, 1952, the council met and enacted an ordinance purporting to review and ratify prior proceedings and particularly ratified and approved the resolution of December 19, 1951, that Districts 101, 106, 107, and 108 be combined and known as District 4. This is the first reference we find in this record to Districts 101, 106, 107, and 108 subsequent to the passage of the resolution of December 19, 1951.

At the same time the council passed a resolution finding that Districts 2 and 4 were duly created, that contracts for construction had been let, and that the construction had been completed. By the terms of the resolution the improvements in Districts 2 and 4 were accepted.

On July 1, 1952, the engineers filed a supplemental certificate dividing the costs of construction in Districts 2 and 4 between "District Cost" and "Intersection Cost."

On August 6, 1952, the council by resolution adopted a finding apportioning the costs according to the engineers' statement of July 1, 1952, changing "District

Cost" to "Opposite abutting property" costs in Districts 2 and 4. It then in the resolution called a special meeting for September 5, 1952, for the purpose of sitting as a board of equalization and levying special assessments. A notice of hearing of special assessments was published beginning August 7, 1952. This was directed to all persons owning or occupying lots or parcels of land in Districts 2 and 4. The notice further provided: "The outer boundaries of Street Improvement District No. 4 and real estate contained therein and subject to special assessments are set out and described in Ordinance No. 301 which created Street Improvement District No. 101, Ordinance No. 305 which created Street Improvement District No. 106, Ordinance No. 306 which created Street Improvement District No. 107, and Ordinance No. 307 which created Street Improvement District No. 108 of said City as combined and designated as Street Improvement District No. 4 by resolution passed and adopted December 19, 1951, which act was ratified and approved by Ordinance No. 312.

"Said assessments are made to pay for improvements in said Street Improvement District No. 2 and Street Improvement District No. 4."

This is the final reference in these proceedings to Districts 101, 106, 107, and 108.

On September 5, 1952, the council met pursuant to notice "for the purpose of sitting as a Board of Equalization and granting a hearing to all persons interested and levying special assessments to pay for street improvements constructed in Street Improvement Districts Nos. 2 and 4 of said City."

At an adjourned meeting on September 8, 1952, the council by resolution assessed the several lots and parcels of land in Districts 2 and 4 to pay the cost of construction of the improvements. The assessment in "District #4," item 173, was that against the plaintiff's property involved in this action.

On November 7, 1952, the council by ordinance author-

ized the issuance of intersection paving bonds to pay the cost of improving the intersections in Paving Districts Nos. 2 and 4 in said city.

Plaintiff assigns error here as to a number of matters which we do not deem it necessary to state or determine.

Plaintiff likewise assigns error as to the sufficiency of the enactment of some of the ordinances, the publication of notices, and as to the findings made by the council in these procedures. We do not deem it necessary to determine these matters.

We assume, but do not decide, the sufficiency of the proceedings creating Districts 101, 106, 107, and 108.

We consider plaintiff's assignments of error that concern the proceedings subsequent to the creation of the above four districts.

It is apparent that the legality of the assessment here involved depends upon the validity of the organization of District 4 and the steps taken thereafter, all of which were taken with reference to that district, with the exceptions noted above.

On the above assumptions we start with the resolution of December 19, 1951, attempting to combine the four districts into District 4.

In Hurford v. City of Omaha, 4 Neb. 336, we held: "* * * when the statute prescribes a particular mode in which the corporation is to act, it can only act in the mode prescribed. To sanction a contrary doctrine, it seems to me, would place the corporation above the law, and would, to say the least, be fraught with dangerous consequences. * * * the following rules may be laid down as a safe guide in the interpretation of statutes, relating to the question under consideration:

"1. That when the particular provision of the statute relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the directions of the statute are given with a view to the proper, orderly, and prompt conduct of busi-

ness merely, the provision may generally be regarded as directory.

"2. When a fair interpretation of the statute, which directs acts or proceedings to be done in a certain way, shows that the legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and pre-requisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory. And under such statutory provisions, the corporation has no election in the matter as to how or when the duties shall be performed, and municipal officers have no option or authority to act differently from the mode particularly prescribed. And if there be manifest irregularity in the proceedings, presumptions are not indulged to sustain such proceedings, or to give new character to that which is seen to be defective, or to supply the place of that which is not apparent.

"3. When the statutory provision relates to acts or proceedings immaterial in themselves, but contains negative terms, either expressed or implied, then such negative terms clearly show a legislative intent to impose a limitation, and therefore the statute becomes imperative, and requires strict performance in the mode or manner prescribed."

We quoted and followed paragraph No. 2 above in Greb v. Hansen, 123 Neb. 426, 243 N. W. 278.

In Hanscom v. City of Omaha, 11 Neb. 37, 7 N. W. 739, we held: "The limitations in a charter upon the power of the mayor and council to impose taxes is one for the protection of the tax payers of the municipality against the abuse of such power by their own agents. * * * Their authority is derived wholly from the statute, and they have no powers except such as are expressly given or are incidentally necessary to carry the same into effect, and their actions in excess of such powers are absolutely null and void."

In Manners v. City of Wahoo, 153 Neb. 437, 45 N. W. 2d 113, construing the statutes here involved, we held: "Powers conferred upon municipal boards by legislative charter will not be extended beyond the plain import of the language used therein. Statutes empowering municipal boards to perform certain functions will be strictly construed, and all doubt will be resolved against the exercise of the power rather than in favor of it."

In Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753, we stated this rule: "The general rule in this state in construing applicable statutes is that the legislative power and authority delegated to a city to construct local improvements and levy assessments for payment thereof is to be strictly construed and every reasonable doubt as to the extent or limitation of such power and authority is resolved against the city and in favor of the taxpayer."

In Manners v. City of Wahoo, *supra,* we held that "the streets of a city of the second class or village can be paved and so paid for only by legally following one of the three factually applicable methods provided in" sections 17-510 to 17-512, R. R. S. 1943.

Authority for the resolution of December 19, 1951, cannot be bottomed upon the provisions of section 17-510, R. R. S. 1943, for that requires that the procedure be initiated by a petition of resident owners.

The authority for the resolution then, if it exists, must be found in section 17-511, R. R. S. 1943. The resolution purports to combine four districts into one district. There is no language in the section that directly or by implication authorizes the creation of a district in that manner.

We construed these particular provisions of the statute in Musser v. Village of Rushville, 122 Neb. 128, 239 N. W. 642, and there held: "The power of the board to make such improvements is circumscribed by the statute, and unless the board conforms to one of the three prescribed methods, they are without power to lawfully bind

property to pay for such improvements. It evidently was not the purpose of the statute to grant unlimited and unrestricted power to the city councils and boards of trustees to improve streets."

In the syllabus it is stated: "The methods prescribed by section 17-432, Comp. St. 1929, granting to cities of the second class and villages power to pave, gravel and improve streets are mandatory and jurisdictional, and unless the governing boards of such municipalities act within one of the three prescribed methods, no valid assessment can be made against property to pay the costs of such improvement."

It necessarily follows that what the council attempted to do by the resolution of December 19, 1951, was an act in excess of the city's powers and was null and void.

But that is not the only defect in this proceeding. Sections 17-510 and 17-511, R. R. S. 1943, provide that the governing body "shall by ordinance" create a district or districts. The mandatory expression is used. Section 17-512, R. R. S. 1943, grants powers to "enact an ordinance" creating a district. Section 17-524, R. R. S. 1943, provides that assessments made under the provisions of sections 17-509 to 17-523 shall be made "by a resolution." The Legislature clearly distinguished between the use of an ordinance in the creating of a district and the use of a resolution in the making of an assessment. There is involved here not a mere dictionary distinction in the definition of words. The distinction is a difference of substance.

Section 17-614, R. R. S. 1943, provides that: "All ordinances and resolutions, * * * shall require for their passage or adoption the concurrence of a majority of all members elected to the council * * *." It then proceeds to more detailed requirements for the adoption of ordinances of a general or permanent nature.

Section 17-613, R. R. S. 1943, provides that: "All ordinances of a general nature shall, before they take effect,

be published * * *," and the requirements as to publi-cation are set out.

Returning now to section 17-511, R. R. S. 1943, the Legislature not only provided for the creation of a district "by ordinance" but further provided that "after the passage, approval and publication of such ordinance," notice of the creation of the district should be published. Here again is a distinct legislative recognition that an ordinance is required.

There are other reasons why the resolution of December 19, 1951, cannot be held to be the equivalent of the ordinance which the statute requires. Section 17-614, R. R. S. 1943, provides in part: "An ordinance shall contain no subject which shall not be clearly expressed in its title, * * *."

Construing this provision in Gembler v. City of Seward, 136 Neb. 196, 285 N. W. 542, we held: "Where the title indicates the subject of the proposed ordinance, the essential requirements of the statutory language quoted have been met, even though more appropriate language might have been employed therein." The resolution here involved had no title.

Even were we to hold, which we do not, that the resolution was the equivalent of the statutory requirement of an ordinance, the procedure followed does not meet the requirements of section 17-511, R. R. S. 1943, so as to give validity to the creation of District 4. The section requires "passage, approval and publication of such ordinance." There is no record here of any publication of the resolution. We find no statute that requires the publication of a resolution. The statute further requires that notice of the creation of the district be published. There is no record here of any publication of such a notice.

In Freeman v. City of Neligh, 155 Neb. 651, 53 N. W. 2d 67, we held that the publications and notices provided for in section 17-511, R. R. S. 1943, are mandatory and jurisdictional steps without which an ordinance never becomes effective. It necessarily follows that the reso-

lution of December 19, 1951, insofar as it purported to create District 4 was null and void.

It was apparently the thought of the council that the creation of District 4 by combining the independently created and existing Districts 101, 106, 107, and 108, furnished the jurisdictional steps required for the new combined district; or stated otherwise, that the new district retained the independent characteristics of its component districts. No procedures were thereafter taken that were bottomed upon the existence of any district other than District 4.

We need not pursue that reasoning. Obviously, at least, the intent of the resolution was to revise and amend the ordinances creating Districts 101, 106, 107, and 108. The ordinances are each directly referred to in the resolution.

Section 17-614, R. R. S. 1943, further provides: "* * * and no ordinance or section thereof shall be revised or amended unless the new ordinance contain the entire ordinance or section as revised or amended, and the ordinance or section so amended shall be repealed." It does not appear that any attempt was made here to meet the requirements of this section.

Subject to the assumption in which we indulged earlier in this opinion, this record shows that the city created four independent districts and thereafter took no further legally valid action based on those districts. The city then by a null and void resolution attempted to create District 4. Thereafter it published notice to bidders, let a contract, accepted the construction, sat as a board of equalization, and levied assessments on plaintiff's property. All of these latter proceedings rest upon the foundation of the null and void resolution and fall with it.

In Besack v. City of Beatrice, 154 Neb. 142, 47 N. W. 2d 356, we held by quote of authority: "If the applicable law prescribes the mode of exercising the power, the mode prescribed must be followed, or the assess-

ment will be void; * * *." And we later held: "* * * special assessments made upon property without compliance with jurisdictional requirements are void as distinguished from irregular, and the owner of such property is not estopped to deny validity of the assessment."

In Fulton v. City of Lincoln, 9 Neb. 358, 2 N. W. 724, with reference to an improvement statute we held: "The council is authorized to act on the subject, and the manner of its acting is clearly prescribed—not by enacting by-laws, making regulations, or passing resolutions, but by enacting ordinances, and nothing is left to be construed by the analogies of state legislation."

In Lincoln Street Ry. Co. v. City of Lincoln, 61 Neb. 109, 84 N. W. 802, we held: "Where the method for exercising the power conferred by statute upon municipal corporations is specially prescribed, that method must be followed in order to validate the action taken thereunder; but where no particular method for the exercise of the power is specified, the city authorities may act by resolution or other appropriate manner, and such action will be as effectual as it would be by ordinance for the same purpose."

It may be well to point out here that the requirement that these steps be taken by ordinance came into the statute in amendments largely rewriting the provisions in 1927. See Laws 1927, c. 42, p. 176.

The city argues here that it had authority under the statutes to create the improvement districts and that when the ordinances creating the four districts were adopted it was possessed of the power to make the improvements and assess the benefits.

As we pointed out in Manners v. City of Wahoo, *supra,* section 17-509, R. R. S. 1943, is subject to the "limitation of power" that none of the improvements shall be ordered except as provided in sections 17-510 to 17-512, R. R. S. 1943. Clearly by both sections 17-510 and 17-511, R. R. S. 1943, the power to cause the work to be done, to let contracts, and to levy assessments for benefits is

limited to "such district" as has been validly created. The power to construct improvements and levy assessments for benefits is a power limited to and must be exercised within the district created.

Such is the clear import of our holding in Besack v. City of Beatrice, *supra.*

The city argues here that what it did was merely to provide for the construction of the work in four properly created districts under a single contract and that the statute does not require separate contracts for each improvement district. The city's contention as to what it did here is an obvious understatement. The answer to the contention is that the statutes do not in terms or by implication authorize combined contracts. The test, under the authorities hereinbefore cited, is: Does the affirmative power appear? No such affirmative power is shown nor is it contended that it exists.

The city further argues that no injury to the plaintiff is shown to have resulted. That obviously is not the test.

The city contends that what was done here was at most an irregularity.

The contention that what occurred here was an irregularity is answered in our decision in Besack v. City of Beatrice, *supra,* quoted above.

The city argues that the ordinance enacted June 12, 1952, at the end of these proceedings ratified the defects in the procedure followed here.

The argument proceeds on this basis: The city had implemented its statutory power and had the authority and duty to make the improvements by the organization of Districts 101, 106, 107, and 108; it made the improvements it had the power to do; its procedures were mere irregularities; and having the power to do what it did do, then its act done by resolution is subject to ratification by the ordinance subsequent to the making of the improvements.

The difficulty with this argument is that it starts on

the foundation of four districts created by ordinance and then relies on improvements made and assessments levied which rest on one district created by resolution.

We have assumed, but not decided, that Districts 101, 106, 107, and 108 were validly organized. The city did not proceed in the exercise of any power it had with reference to those districts. It proceeded to make improvements and levy assessments with reference to a district the organization of which was null and void.

We have been unable to determine, with any certainty, in which one of Districts 101, 106, 107, or 108 plaintiff's property would have been assessable had the improvements been made within the framework of the authority of those districts. There is no uncertainty about the fact that plaintiff's property was assessed for benefits in District 4, and that district only.

This argument is tantamount to saying that the city could proceed to make improvements without compliance with the jurisdictional requirements of the statute as to the creation of a valid district, and after the improvements were completed it will be sufficient then to enact an ordinance to implement its power. In short, that it can do at the end of the proceedings that which the statute makes the first jurisdictional requirement to create the power to improve and assess.

Paraphrasing language used in Gutta Percha & Rubber Mfg. Co. v. Village of Ogallala, 40 Neb. 775, 59 N. W. 513, 42 Am. S. R. 696, approved in City of Plattsmouth v. Murphy, 74 Neb. 749, 105 N. W. 293, if ratification is sanctioned upon a proceeding of this kind, legislative restriction upon municipal corporation powers is in vain.

In the beginning of its brief the city called our attention to the rule stated in Chicago & N. W. Ry. Co. v. City of Omaha, *supra*, that: "When a party attacks a paving assessment for the reason that it is illegal, or for an unauthorized purpose, the burden is on him to

prove the invalidity of the assessment, or that it was for an unauthorized purpose."

We revert to it in closing and hold that plaintiff has proven the invalidity of the assessment involved.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment for the plaintiff in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.