MARIE T. SHANAHAN, APPELLEE, V. STANLEY C. JOHNSON, COUNTY TREASURER, APPELLANT.

102 N. W. 2d 858

Filed May 6, 1960. No. 34732.

*A. C. Sidner,* for appellant.

*Kerrigan, Flory & Miller,* for appellee.

*John L. Cutright,* amicus curiae.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Marie T. Shanahan, brought this action for herself and on behalf of other landowners similarly situated, against defendant, Stanley C. Johnson, county treasurer of Dodge County, seeking to enjoin the collection of allegedly void assessments for drainage improvements made by the county board of Dodge County in straightening and altering Rawhide Creek under the provisions of Chapter 31, article 1, R. R. S. 1943. Plaintiff alleged in substance that after a petition for the improvement had been filed by landowners with the county clerk, and a copy of same had been delivered on April 13, 1955, to the county board, hereinafter called the board, it took certain preliminary steps; approved and levied assessments; let the contract for construction of the improvement; completed its construction; and paid the contractor in full therefor prior to August 25, 1956. However, allegedly, a cause entitled Frederiksen v. Dahl, brought on behalf of plaintiff therein and other landowners similarly situated, was tried in the district court for Dodge County on August 27, 1956, and thereafter a judgment was rendered which found that construction of the project had been completed prior to the trial, but found and adjudged that by reason of a jurisdictional defect, all proceedings had and done by the board on and after April 13, 1955, were void and a nullity, including any levy of assessments against any real estate based upon such proceedings. Defendants therein, who were the county clerk and the defendant herein, were then perpetually enjoined from performing or attempting to perform any action toward collecting or receiving any such assessments; the assessments then on file with defendant county treasurer in connection with such project were declared void; and the liens and clouds upon the titles to real estate therein referred to were

declared void and of no effect as to all property which had been purportedly assessed to pay for such improvement.

Plaintiff alleged that such judgment was not appealed from but has at all times remained in full force and effect since September 7, 1956, and that, as ordered by the board, all such void assessments as had been paid were refunded to the landowners.

Plaintiff then alleged in substance that on September 6, 1956, and thereafter, the board, having accepted as final the court's decision heretofore set forth, again attempted to comply with Chapter 31, article 1, R. R. S. 1943, by following the statutes and taking the procedural steps required by it from and after the filing of the original petition for the project on April 13, 1955, without making any changes in the construction work which had been theretofore completed; that thereafter the county surveyor filed with the board a cost estimate and specifications for the project, together with an assessment of benefits, after which the county clerk set a date for hearing on assessments and served notices thereof on landowners whose lands were so purportedly assessed for such improvement project. Allegedly thereafter the board purportedly approved such new assessments and directed the county clerk to advertise for sealed bids for construction of the ditch, and pursuant thereto a purported letting was held April 10, 1957, whereat the board let a contract to the original contractor, who was sole bidder, on a bid of $39,474.84, exactly $1 more than the amount previously received by such contractor for actual completed construction of the ditch project. Plaintiff alleged that the board ordered the county clerk to place the assessments, including that against plaintiff's land, on the tax rolls by furnishing defendant a duplicate of assessments prepared by the county surveyor and approved by the board, which provided by resolution in connection therewith that such assessments should be due and payable September 1, 1957.

Plaintiff alleged that all such proceedings on and after September 6, 1956, were wholly void for reasons theretofore alleged, and for the reasons that neither Chapter 31, article 1, R. R. S. 1943, nor any other statute contains any provision authorizing the board to either assess benefits a second time or make a reassessment after assessments have been declared void or to make an assessment or impose a lien therefor on plaintiff's real estate or upon that of anyone else after the improvement had been completed; that said statutes provide a certain order of work and procedure by the board and other county officials which was not followed in the proceedings commenced September 6, 1956, in that all of said proceedings came after the actual construction work had been done, and the contractor performed no work whatsoever on the purported contract let April 10, 1957; and that if for some reason the proceedings after September 6, 1956, were not a reassessment, then the statute gives the board no power to make an assessment after a purported assessment had been judicially declared void, and no power to determine a route, make a survey, hold a hearing on assessments on benefits and damages, advertise for bids, or let a contract on an improvement project, the work on which has been completed prior to the taking of such procedural steps.

Plaintiff alleged that unless defendant is enjoined from doing so, he will collect the assessments against her property and that of others similarly situated, and that unless said assessments are enjoined as void, they will remain a perpetual lien against said real estate and a cloud on the titles thereof, all of which would be wholly unlawful and result in irreparable injury to plaintiff, for which plaintiff has no adequate remedy at law. Accordingly, plaintiff prayed for a judgment that the second assessments were void; for a perpetual injunction; and for equitable relief.

Defendant's general demurrer to plaintiff's petition was overruled, and he answered. Therein he denied

generally and specifically denied that the assessments of which plaintiff complains were reassessments for work previously done. He then admitted as follows: That defendant was county treasurer of Dodge County, and that certain assessments for altering and straightening Rawhide Creek, including the one against plaintiff's real estate, had been certified to him, and unless prohibited by the court, he would proceed to collect the same; that theretofore, and after September 11, 1956, at request of landowners, the board commenced the Rawhide Creek project a second time and took all the required procedural steps under the provisions of Chapter 31, article 1, R. R. S. 1943, to complete the project; and that the board necessarily and in the exercise of good judgment and for the best interests of the landowners, including plaintiff, adopted and utilized work completed under a former project. Defendant alleged in that connection that even if the board were wrong in its judgment, notice having been given as required by law, and neither plaintiff nor other landowners having appealed from any determination of the board or from the assessments for substantial benefits received, they were estopped from objecting to any determination so made. Defendant alleged that plaintiff had an adequate remedy at law provided by statute but she had failed and refused to follow the provisions thereof. Defendant prayed for a denial of plaintiff's petition and recovery of costs.

The cause was tried as if plaintiff's reply were a general denial, and a judgment was thereafter rendered which found and adjudged that the proceedings of the board, purporting to act on a petition praying for certain work to be done upon Rawhide Creek, are and were void at all times on and after April 13, 1955; that all proceedings had and done in the premises on and after September 6, 1956, including the assessments and levy of special assessments for the project, were and are void and a nullity; and perpetually enjoined defendant from performing or attempting to perform any action toward

the collection or receiving of any assessments based upon any such proceedings. The judgment also declared void and of no effect the liens and clouds upon the titles to real estate involved, not only as respects plaintiff's property but also as to all property purportedly assessed for taxes or special assessments to pay for the improvement, the owners of which property elect to avail themselves of the judgment. The judgment further stated that it was: "* * * without prejudice to any further procedures there may be in connection with the levy or collection of assessments in connection with said improvement project, the court holding herein that proceedings heretofore taken and assessments heretofore levied are void." In connection with such quoted provision, we conclude that it is of no consequence here and that we are not required to discuss or determine whether or not there are further procedures by which the county board can levy or collect assessments or taxes in connection with said project. It is sufficient to say that such provision in the judgment was not in any manner prejudicial to defendant or the county board.

Thereafter, defendant's motion for new trial was overruled, and he appealed, assigning and arguing in substance: (1) That the trial court erred in enjoining the collection of assessments against plaintiff and other landowners who had not complied with section 31-124, R. R. S. 1943, and were estopped to claim that the second proceedings and resulting assessments were void; and (2) that the judgment was contrary to law. We do not sustain the assignments.

The facts are either stipulated or without dispute, and they amply sustain the allegations of plaintiff's petition. They are substantially as follows: Plaintiff was the owner of described real estate in Dodge County upon which assessments for the Rawhide Creek project were made and approved a second time. Defendant was at all times the duly qualified and acting county treasurer of Dodge County. Purporting to act under Chapter 31,

article 1, R. R. S. 1943, a petition requesting the county board to clean and straighten Rawhide Creek and its overflow channel, sometimes known as Dry Creek, was filed by several landowners with the county clerk, and on April 13, 1955, a copy thereof was delivered to the board. Thereupon, the board, purportedly acting under the provisions of Chapter 31, article 1, R. R. S. 1943, took certain preliminary steps; approved and levied assessments; let the contract for construction of the improvement; completed its construction; and paid the contractor $39,473.84, in full payment for the completed work, with money borrowed from the general fund of the county.

However, as alleged by plaintiff and heretofore mentioned, such proceedings were admittedly adjudged to be void on and after April 13, 1955, because the board: "* * * never made the determination required by Section 31-105 of the statutes that the line of the proposed improvements described in the petition * * * was or is the best route * * * which is jurisdictional." State ex rel. Union Pacific Ry. Co. v. Colfax County, 51 Neb. 28, 70 N. W. 500, and Dodge County v. Acom, 61 Neb. 376, 85 N. W. 292, affirmed on rehearing, 72 Neb. 71, 100 N. W. 136, sustained that conclusion. In that connection, the foregoing judgment also said: "That it is not necessary to determine and this court makes no determination as to whether other defects in the proceedings alleged in the petition (of plaintiff's therein) are actually defects or have been proved." Admittedly, such judgment also perpetually enjoined collection of the assessments as void, and admittedly such judgment was not appealed from but became final and remained in full force and effect at all times on and after September 7, 1956. Admittedly, thereafter the board ordered refunds of all such void assessments as had been paid, and they were all refunded except $61.71 which remained unclaimed.

In that situation, on September 6, 1956, and there-

after, the board, accepting the aforesaid judgment as final and binding on it, admittedly began second proceedings wherein it purportedly backed up, followed the provisions of Chapter 31, article 1, R. R. S. 1943, and took the procedural paperwork steps required thereby from and after the filing and delivery of the original landowners' petition on April 13, 1955. The board again viewed the premises, and after considering letters from the county's engineer and its special counsel, the board on September 11, 1956, adopted a resolution which purported to remedy the jurisdictional defects which had made its first proceedings and assessments void. In that connection, no change was made during the second proceedings in the report, plat, profile, survey, specifications, and cost estimates made by the county surveyor for the construction work which had been theretofore entirely completed. In that situation also, an assessment for benefits was filed by the county surveyor after which the county clerk set a date for hearing thereon and served notice thereof on landowners whose lands were so purportedly assessed. Thereafter, the county board purportedly approved such new assessments and directed the county clerk to advertise for sealed bids for construction of the ditch, which in fact had already been constructed. Pursuant to such advertisement, a purported letting was held April 10, 1957, whereat the board let the contract a second time to the original contractor, who was sole bidder on a bid of $39,474.84, exactly $1 more than the amount previously received by him for his former completed actual construction of the project. In that connection, the advertisement for bids provided in part: "The contract is to be awarded to the lowest responsibile bidder * * *" but "The successful bidder shall give suitable credit for any work heretofore done on said project." In other words, by bidding just $1 more for being required to do exactly nothing under the second contract, the original contractor and bidder purportedly complied with the

advertisement for bids, and on September 7, 1957, he was paid $1 upon a claim theretofore filed by him.

In connection with the entire second proceedings, the chairman of the board testified that after the court had declared the first proceedings and assessments void, the board concluded that it had to do something. Thereupon, its then counsel advised the board that it could proceed to back up, refile a petition, and take all the procedural steps again such as were required by the paperwork, so it then backed up and did all the paperwork over again. Thus, the board went out and looked at the project and inspected the route of the creek even though it had already been changed by previous construction of the ditch, and the board made no change in the route of the ditch that had already been completed. He testified that the guiding principle of the board in all its proceedings after September 6, 1956, was that the paperwork record of the second proceedings should be as exactly in accordance with the statutes as the board could make it. He admitted that on and after September 6, 1956, the board did not make any new determinations or decisions, but that it simply ratified what it had already decided and done.

On the other hand, the county clerk testified that the plans and specifications for both the first and second proceedings were identical, and that by August 25, 1956, " 'everything was done and the Board accepted the project and has paid the contractor in full' * * * all of his money under that contract for the first project * * *." He also verified that as directed by the board in the second proceedings, he advertised for sealed bids for construction of the ditch already completely constructed, and that on April 10, 1957, a contract therefor was let as heretofore set forth.

The county surveyor testified that he drew the plans and specifications for the ditch in both proceedings, and supervised complete construction of the ditch prior to September 6, 1956; that he thereafter inspected the

ditch about September 10, 1956; that he submitted separate cost estimates to the county board for both the first and second proceedings; and that the estimated cost for listed items of work and excavation of the ditch in each estimate was the same except for the cost of hauling some dirt included in the second estimate. However, such dirt hauling was not required to be done by the contractor under the second contract.

The county treasurer testified that $49,000 was transferred from the county general fund to the Rawhide Ditch fund prior to paying the contractor for construction of the ditch in August 1956; that after September 11, 1956, by refunding the first void assessments, there were no other funds to the credit of the project with which to pay for right-of-way and damages; that the total of the second assessments was about $65,000, which was sufficient to complete the project in its entirety, including prior construction of the ditch and payment for right-of-way and damages; that $33,762.79 has been paid on the second assessment; and that $21,722.29 remained in the project fund.

Defendant first argued that his demurrer should have been sustained and that the trial court erred in enjoining collection of the second assessments as sought by plaintiff because she had not complied with section 31-124, R. R. S. 1943, by first paying the amount of her assessments, and that she was estopped to claim that the second proceedings were void. We do not agree.

In that respect, as early as Morris v. Merrell, 44 Neb. 423, 62 N. W. 865, this court, in dealing with that section, held that: "A party who is not guilty of laches may invoke the aid of a court of equity to restrain the collection of a void tax or assessment."

Thereafter, in Cullingham v. City of Omaha, 143 Neb. 744, 10 N. W. 2d 615, this court quoted the foregoing rule, but, relying upon City of McCook v. Red Willow County, 133 Neb. 380, 275 N. W. 396, we modified such rule by concluding that when special assessments against

property to pay costs are void, knowledge of the proceedings and of construction of the improvement will not estop the owner from avoiding liability therefor, and that such a void tax or assessment cannot be enforced solely on the ground of benefits of the improvement to the owners of abutting lands. In that connection, this court said: "It will be noted that by the earlier rule laches might be a defense to an action in equity to restrain the collection of a void tax or assessment whereas by the later rule it may not.

"We think the later statement of the rule is the correct one. Delay of effort to protect against a void tax or assessment cannot have the effect of making vital and valid that which had no vitality or validity from the beginning."

Therein, also, this court went on to say: "Clearly the statute contemplated that contracts for public improvements should be entire in character, that is that full responsibility for the performance of the contract for the contract price should rest upon the contractor. It does not contemplate a discretion to modify or depart therefrom by the municipality and consequent payment on the basis of modification or departure in violation of the terms of the contract and statute.

"The power of a municipality to contract for public improvements and to levy special assessments to defray the expense is statutory and such powers must be strictly construed.

"In Hutchinson v. City of Omaha, 52 Neb. 345, 72 N. W. 218, this court said: 'It is familiar law that in order to sustain an assessment of this character the record must show affirmatively a compliance with all the conditions essential to the valid exercise of the taxing power.'

"In Futscher v. City of Rulo, 107 Neb. 521, 186 N. W. 536, it was stated: 'The power delegated to a city to construct local improvements and levy special assessments for the payment thereof is to be strictly construed

against the city, and every reasonable doubt as to the extent or limitation of such power is resolved against the city.' The same holding was made in slightly different wording in Baker v. Dahlman, 119 Neb. 425, 229 N. W. 280. Of like effect are Garver v. City of Humboldt, 120 Neb. 132, 231 N. W. 699, and Musser v. Village of Rushville, 122 Neb. 128, 239 N. W. 642.

"A compelling reason for this rule is well stated in Wright v. Hoctor, 95 Neb. 342, 145 N. W. 704, by quotation from Malette v. City of Spokane, 68 Wash. 578, 123 Pac. 1005, as follows: 'Under such a system there would be no limit to the "discretion" of the city officers, who to serve personal or political ends might burden the taxpayer beyond the point of endurance.' " Such opinion was cited with approval in Besack v. City of Beatrice, 154 Neb. 142, 47 N. W. 2d 356. See, also, Annotation, 108 A. L. R. 204, citing numerous authorities from this jurisdiction. By analogy, of course, the same rules apply in cases such as that at bar.

We are required then to determine whether the assessments here involved were void within the meaning of the law. We conclude that they were void.

In Thompson v. Colfax County, 106 Neb. 351, 183 N. W. 571, this court concluded that in such proceedings the board of county commissioners acts as agent or trustee of the persons whose property is chargeable with the cost of the work, and not for the county. In that connection, also, as early as Morton v. Carlin, 51 Neb. 202, 70 N. W. 966, this court held: "Counties and county boards can exercise only such powers as are expressly conferred upon them by statute, and such grant of powers must be strictly construed. (State v. Lincoln County, 18 Neb. 283.)"

In State ex rel. Johnson v. County of Gage, 154 Neb. 822, 49 N. W. 2d 672, we held that: "A county in this state has only such powers as are expressly conferred upon it by statutes and such as are incidentally indispensable to carry into effect those expressly granted it.

"A grant of power to a county is strictly construed and any reasonable doubt of the existence of the power is resolved against the county." Such opinion was cited with approval as recently as Board of Commissioners v. McNally, 168 Neb. 23, 95 N. W. 2d 153.

As early as Hurford v. City of Omaha, 4 Neb. 336, citing authorities, this court said: "That when the particular provision of the statute relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the directions of the statute are given with a view to the proper, orderly, and prompt conduct of business merely, the provision may generally be regarded as directory.

"When a fair interpretation of the statute, which directs acts or proceedings to be done in a certain way, shows that the legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and pre-requisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory. And under such statutory provisions, the corporation has no election in the matter as to how or when the duties shall be performed, and municipal officers have no option or authority to act differently from the mode particularly prescribed. And if there be manifest irregularity in the proceedings, presumptions are not indulged to sustain such proceedings, or to give new character to that which is seen to be defective, or to supply the place of that which is not apparent.

"When the statutory provision relates to acts or proceedings immaterial in themselves, but contains negative terms, either expressed or implied, then such negative terms clearly show a legislative intent to impose a limitation, and therefore the statute becomes imperative, and requires strict performance in the mode or manner prescribed."

That opinion was cited and quoted from with approval by this court in Chicago, St. P., M. & O. Ry. Co. v. City of Randolph, 163 Neb. 687, 81 N. W. 2d 159, wherein we said: " '* * * when the statute prescribes a particular mode in which the corporation is to act, it can only act in the mode prescribed. To sanction a contrary doctrine * * * would place the corporation above the law, and would, to say the least, be fraught with dangerous consequences.' "

In Clay County v. Bottorf, 166 Neb. 262, 88 N. W. 2d 898, we held that: "A grant of authority to a county is strictly construed and enjoyment of the grant requires a compliance with any condition or restriction of the grant."

In Besack v. City of Beatrice, supra, we held that: "The power and authority to make public improvements does not of itself confer power and authority to levy and collect special taxes or assessments to defray the cost of such improvements.

"The legislative power and authority delegated to a city to construct local improvements and levy assessments for payment thereof is to be strictly construed and every reasonable doubt as to the extent or limitation of such power and authority is resolved against the city and in favor of the taxpayer." See, also, Chicago & N. W. Ry. Co. v. City of Seward, 166 Neb. 123, 88 N. W. 2d 175; Danielson v. City of Bellevue, 167 Neb. 809, 95 N. W. 2d 57; Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753.

Also, as held in Haecke v. Eastern Sarpy County Drainage Dist., 141 Neb. 628, 4 N. W. 2d 744: " 'Statutory provisions authorizing assessments of special taxes against property benefited by public improvements are to be strictly construed, and it must affirmatively appear that the taxing authorities have taken all steps which the law makes jurisdictional; the failure of the record to show such proceedings will not be aided by

presumptions.' Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734."

Without quoting therefrom or particularly setting forth its provisions at length, it is sufficient for us to point out that the respective sections appearing in Chapter 31, article 1, R. R. S. 1943, provide the procedural steps and the order of time in which they must be taken to authorize and approve a project such as that here involved; ascertain and determine the cost of location and construction; make and approve the apportionments and assessments; advertise for bids and let the contract for construction to the lowest responsible bidder; supervise and complete the construction; and pay the contractor therefor, as well as pay for right-of-way and damages.

In the case at bar, a petition for the improvement was filed with the county clerk, who delivered a copy of same to the board April 13, 1955. Thereafter, the first contract was let, the ditch was entirely and completely constructed, and the contractor was paid in full therefor prior to August 27, 1956, whereupon the entire proceedings, including the assessments theretofore made and approved by the board, were held to be void and a nullity. It was thereafter, on September 6, 1956, that the county board attempted to back up, complete the course of paperwork procedure provided by Chapter 31, article 1, R. R. S. 1943, and thereby ratify its former procedure by revising and amending same to supply its jurisdictional defects and give validity to what the board had already done, which had no vitality or validity from its beginning. In other words, every step required by statute except the filing of the landowner's petition and bond, was taken by the board after the project had been entirely completed and without any new determination or decision except that the line of the project was the best route, which the chairman of the board testified had actually been determined in the first proceedings but had not been made in writing

or placed of record in its journal. Now, after the project had been completed during the first proceedings, which were admittedly void, the defendant argues that it was sufficient for the board to simply proceed with the required paperwork and thereby implement its power to make new valid assessments. We do not agree.

A comparable contention was made in Chicago, St. P., M. & O. Ry. Co. v. City of Randolph, *supra,* wherein this court said: "This argument is tantamount to saying that the city could proceed to make improvements without compliance with the jurisdictional requirements of the statute as to the creation of a valid district, and after the improvements were completed it will be sufficient then to enact an ordinance to implement its power. In short, that it can do at the end of the proceedings that which the statute makes the first jurisdictional requirement to create the power to improve and assess.

"Paraphrasing language used in Gutta Percha & Rubber Mfg. Co. v. Village of Ogallala, 40 Neb. 775, 59 N. W. 513, 42 Am. S. R. 696, approved in City of Plattsmouth v. Murphy, 74 Neb. 749, 105 N. W. 293, if ratification is sanctioned upon a proceeding of this kind, legislative restriction upon municipal corporation powers is in vain."

Further, in State ex rel. Union Pacific Ry. Co. v. Colfax County, *supra,* this court said: "County boards possess limited jurisdiction, and the grant of power conferred upon them is to be strictly construed. * * * They have no authority to construct a ditch under the drainage law, unless all the jurisdictional steps have been taken."

We conclude that the applicable statutes prescribe the jurisdictional procedure and the mode whereby the board exercises its power to make drainage improvements, and that such procedure and mode must be strictly followed or the assessments will be void. Under Chapter 31, article 1, R. R. S. 1943, a county board can-

not physically locate and complete construction of a drainage improvement, pay the contractor in full therefor, then take the statutory steps required by sections 31-105 to 31-111, and section 31-118, R. R. S. 1943, and thereby validly assess the cost of the improvement to abutting landowners. To .hold otherwise would clearly be a violation of the statute, which cannot be justified by a need for the improvement.

There is another reason why the assessments were void. They were in effect a reassessment, and we do not have presented herein a case where the Legislature has attempted to authorize a reassessment, or a second procedure, or otherwise to permit the making of another assessment after one has been declared void. Defendant in his brief concedes "that a governing body having constructed and completed an improvement and the assessment for the same been held invalid, could not breathe new life into the old assessment by some paper work in the way of new certification."

As stated in 48 Am. Jur., Special or Local Assessments, § 147, p. 688, citing authorities: "A reassessment implies not merely the fact of the improvement, but also that one attempt has been made to collect the cost and failed, and it is in a sense a continuation of the original proceedings."

Since the board in its second paperwork based its proceedings on the original petition of landowners filed and delivered to the board on April 13, 1955, we believe that it was simply a continuation of the original void proceedings. In that connection, Chapter 31, article 1, R. R. S. 1943, does not authorize a county board to make a reassessment after an assessment has been declared void by a court of competent jurisdiction whose decision was not appealed and was admittedly in full force and effect. There are numerous other provisions in the statutes whereby governing bodies such as first-class cities, primary cities, metropolitan cities, and drainage districts, of which this is not one, are given authority in

one form or another, to reassess where the first assessments have been declared void. See, §§ 14-538, 15-719, 15-725, 15-822, 16-708, and Chapter 31, articles 3, 4, and 5, R. R. S. 1943. On the other hand, second-class cities and villages, drainage projects initiated by individual landowners, counties, and county boards are given no such general powers in any statute cited or found. In that connection, defendant argued that the board simply utilized the previous work in developing a new plan. However, the undisputed facts heretofore set forth entirely refute that contention.

We have been cited no authority and we have found none which could give defendant any relief in this proceeding. For reasons heretofore stated, we conclude that the judgment of the trial court should be and it is hereby affirmed. All costs are taxed to defendant.

AFFIRMED.